# **EXHIBIT A**

| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER<br>B0509FINPS1700245 | | Page 1 of 55 |

---

## RISK DETAILS

**UNIQUE MARKET REFERENCE:**   B0509FINPS1700245

**TYPE:**   Professional Indemnity Insurance

**ASSURED:**   ChemTreat, Inc

**PRINCIPAL ADDRESS:**
5640 Cox Road
Glen Allen
Virginia 23060
United States of America

**PERIOD:**   From: 1st July 2017
To:    1st July 2018
Both days at 12:01 a.m. Local Standard Time at the Principal
Address

**INTEREST:**   Professional Services – As per policy form.

**LIMIT OF LIABILITY:**   USD 2,000,000    each Claim, including Claims Expenses
and
USD 4,000,000    in the aggregate, including Claims Expenses

Deductible:
USD 150,000    each and every Claim, including Damages
and Claims Expenses

**TERRITORIAL LIMITS:**   Worldwide as per the wording

**CONDITIONS:**   Wording:  623AFB00201 – AFB A&E Mediatech Policy Wording

1.    LSW 559 - Retroactive Limitation Clause

2.    Retroactive date: 15th January 2004 but 18th February 2005
for limits excess of USD1,000,000.

3.    NMA 1477 - Radioactive Contamination Exclusion Clause


Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **2** of **55** |

4. This policy provides coverage for consulting services provided to third parties for a fee

5. NMA 1256 - Nuclear Incident Exclusion Clause

6. Public Service of New Hampshire, Northern Wood Power Project, Schiller Station, 400 Gosling Road, Portsmouth, NH 03801 is included under this policy as an Additional Assured but only in respect of is vicarious liability arising out of the negligent acts, errors or omissions of the Named Insured.

7. United States Steel Corporation, US Steel Tower Room 2028, 600 Grant Street, Pittsburgh, PA 15219 is included under this policy as an Additional Assured but only in respect of its vicarious liability arising out of the negligent acts, errors or omissions of the Named Insured.

8. 623AFB 00097 - Warranted no higher limits endorsement

9. Notice of Claim to:    Marsh USA Inc.
Washington Square
1050 Connecticut Avenue NW
Suite 700 I
Washington
DC 20036

And    Phelps Dunbar
Marshall Redmon
445 North Boulevard, Suite 701
Baton Rouge
LA 70802

10. Notice of Election:    Marsh USA Inc.
Washington Square
1050 Connecticut Avenue NW
Suite 700 I
Washington
DC 20036

11. Additional Insured Endorsement (FutureFuel Chemical Company)

12. Excluding Matters Exclusion

13. Amended Product Liability Exclusion Endorsement

14. General, Products and Completed Operations Liability Warranty and Exclusion Endorsement

15. Design Build Endorsement





Contract Leader

| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page 3 of 55 |

16.  It is hereby noted and agreed that **INSURING AGREEMENT I.B** is excluded in its entirety.

17.  Amended Definition S endorsement.

20.  Cover hereby excludes Pre-Claims Assistance under **INSURING AGREEMENTS II SUPPLEMENTARY PAYMENTS**

Special Cancellation/Insurer Downgrade Clause as attached.

IUA 09-054 Foreign Account Tax Compliance Act ("FATCA") - only to apply in respect of FATCA in scope contracts.

Where the terms  "(Re)Insurer" and/or "contract period" and/or "(Re)Insured"  do not appear in the Risk Details or attached Policy wording the functional equivalents of these terms shall be deemed incorporated herein.

**CHOICE OF LAW & JURISDICTION:**

Choice of Law:
As per 623AFB00113 – Choice of Law Clause (New York)

Jurisdiction:
As per Section XXV of the wording – Service of Suit Clause (U.S.A.) naming:
Mendes & Mount,
750 Seventh Avenue,
New York,
NY 10019-6929

**PREMIUM:**

USD 185,000 (100%)

**PREMIUM PAYMENT TERMS:**

LSW 3000 Premium Payment Clause as attached.

**TAXES PAYABLE BY ASSURED AND ADMINISTERED BY INSURERS:**

None



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page 4 of 55 |

**TAXES PAYABLE BY INSURERS AND ADMINISTERED BY THE ASSURED OR THEIR AGENT:** None

**RECORDING, TRANSMITTING AND STORING INFORMATION:** Where Marsh Ltd maintains risk and claim data, information or documents, Marsh Ltd may hold such data, information or documents electronically.

**INSURER CONTRACT DOCUMENTATION:** This document details the terms, definitions, exclusions and conditions (the contract terms) that constitutes the contract document.

A physical copy of this document will be provided to the (Re)Insured as Evidence of Cover. No further contractual documentation required.

For the purposes of this contract:

1) where there is any discrepancy between the headings stated in the Risk Details section herein and the terminology used in any corresponding Wording and/or Endorsements and/or Clauses attached, the headings stated in the Risk Details section shall be deemed to read as per such Wording and/or Endorsements and/or Clauses,

2) if the words 'Underwriters', 'Company' or 'Policy' appear herein, or in any Endorsements and/or Clauses attaching, then these words shall be deemed to mean 'Reinsurers', 'Insurers' or 'contract document' respectively.



23
06
17
A76

Contract Leader

| **MARSH LTD** | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page 5 of 55 |

## A & E MEDIATECH

### ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY,
### ARCHITECTS, ENGINEERS AND CONTRACTORS POLLUTION LIABILITY,
### TECHNOLOGY BASED SERVICES,
### TECHNOLOGY PRODUCTS,
### COMPUTER NETWORK SECURITY, AND
### MULTIMEDIA AND ADVERTISING LIABILITY INSURANCE

### DECLARATIONS

**THIS IS A CLAIMS-MADE AND REPORTED LIABILITY INSURANCE POLICY. PLEASE READ CAREFULLY.**

**POLICY NUMBER:** FINPS1700245

1. **NAMED ASSURED:**

    ChemTreat, Inc

    **ADDRESS:**
    5640 Cox Road
    Glen Allen
    VA 23060
    USA

2. **POLICY PERIOD:**

    FROM:   1st July, 2017

    TO:   1st July, 2018

    BOTH DAYS AT 12:01 AM STANDARD TIME AT THE ADDRESS SHOWN IN NUMBER 1 ABOVE.

3. **LIMIT OF LIABILITY:**

    (a) USD2,000,000 Each **Claim** - includes **Claims Expenses**.

    (b) USD4,000,000 Aggregate for the **Policy Period** - includes **Claims Expenses**.

4. **DEDUCTIBLE:**

    USD150,000 Each **Claim** Deductible - includes **Claims Expenses**.



Contract Leader



| **MARSH LTD** | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page 6 of 55 |

**5. PREMIUM:**

   USD 185,000

**6. RETROACTIVE DATE:**

15th January 2004 but 18th February 2005 for limits excess of USD1,000,000

**7. TECHNOLOGY BASED SERVICES, TECHNOLOGY PRODUCTS, COMPUTER NETWORK SECURITY, AND MULTIMEDIA AND ADVERTISING LIABILITY INSURANCE COVERAGE OPTION:**

   Purchased        X        If this box is checked then Insuring Agreements C, D, E and F of this Policy shall apply.

   Not Purchased    ☐        If this box is checked then Insuring Agreements C, D, E and F of this Policy shall not apply.

   If no box is checked, then Insuring Agreements C, D, E and F of this Policy shall not apply.

**8. OPTIONAL EXTENSION PERIOD:**

   **(a) Premium for** Optional Extension Period:        100%

   **(b) Length of** Optional Extension Period:          12 months

**9. NOTICE OF CLAIM TO:**

   Marsh USA Inc.
   Washington Square
   1050 Connecticut Avenue NW
   Suite 700 I
   Washington
   DC 20036

   And

   Phelps Dunbar
   Marshall Redmon
   445 North Boulevard, Suite 701
   Baton Rouge
   LA 70802



Contract Leader



| **MARSH LTD** | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page 7 of 55 |

## 10. NOTICE OF ELECTION:

Marsh USA Inc.
Washington Square
1050 Connecticut Avenue NW
Suite 700 I
Washington
DC 20036

## 11. SERVICE OF SUIT:

Mendes & Mount,
750 Seventh Avenue,
New York,
NY 10019-6929

## 12. CHOICE OF LAW:

New York

## FORMS AND ENDORSEMENTS ATTACHED HERETO:

- LSW 559          Retroactive Limitation Clause
- NMA 1477         Radioactive Contamination Exclusion Clause
- NMA 1256         Nuclear Incident Exclusion Clause
- 623AFB00097      Warranted no higher limits endorsement
- 623AFB00113      Choice of Law Clause (New York)
- LSW3000 – Premium Payment Clause (60 days)
- Additional Insured Endorsement (FutureFuel Chemical Company)
- Excluding Matters Clause
- Amended Product Liability Exclusion Endorsement
- General, Products and Completed Operations Liability Warranty and Exclusion
  Endorsement
- Design Build Endorsement
- Amended Definition S endorsement
- Special Cancellation / Insurer Downgrade Clause
- IUA 09-054 Foreign Account Tax Compliance Act ("FATCA")





Contract Leader

| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **8** of **55** |

**A & E MEDIATECH**

**ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY,
ARCHITECTS, ENGINEERS AND CONTRACTORS POLLUTION LIABILITY,
TECHNOLOGY BASED SERVICES,
TECHNOLOGY PRODUCTS,
COMPUTER NETWORK SECURITY, AND
MULTIMEDIA AND ADVERTISING LIABILITY INSURANCE**

NOTICE: This Coverage is provided on a Claims Made and Reported Basis.  Except as otherwise provided, this coverage applies only to **Claims** first made against the **Assured** during the **Policy Period** and reported in writing to the Underwriters pursuant to the terms of this Insurance Policy.  The Limit of Liability available to pay **Damages** shall be reduced and may be completely exhausted by payment of **Claims Expenses**.  Please review the coverage afforded under this Insurance Policy carefully and discuss the coverage hereunder with your insurance agent or broker.

In consideration of the payment of the premium and reliance upon the statements in the **Application** which is deemed a part of this Insurance Policy (hereinafter referred to as the 'Policy' or 'Insurance') and subject to the Limit of Liability, deductible, exclusions, conditions and other terms of this Insurance, the Underwriters agree with the Named Assured, set forth at Item 1 of the Declarations made a part hereof:

I.      **INSURING AGREEMENTS**

A.      **Architects and Engineers Professional Liability**

To pay on behalf of the **Assured Damages** and **Claims Expenses,** in excess of the Deductible, which the **Assured** shall become legally obligated to pay because of any **Claim** first made against the **Assured** during the **Policy Period** or **Optional Extension Period** (if applicable) and reported to Underwriters either during the **Policy Period,** within sixty (60) days after the expiration of the **Policy Period** or during the **Optional Extension Period** (if applicable) arising out of any negligent act, error or omission in rendering or failure to render **Professional Services** on or after the Retroactive Date set forth in Item 6 of the Declarations and before the end of the **Policy Period** by the **Assured** or by any person, including an independent contractor, for whose negligent act, error or omission the **Assured Organization** is legally responsible.



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **9** of **55** |

B. **Architects, Engineers and Contractors Pollution Liability**

To pay on behalf of the **Assured Damages** and **Claims Expenses**, in excess of the Deductible, which the **Assured** shall become legally obligated to pay because of any **Claim** first made against the **Assured** during the **Policy Period** or **Optional Extension Period** (if applicable) and reported to Underwriters either during the **Policy Period**, within sixty (60) days after the expiration of the **Policy Period** or during the **Optional Extension Period** (if applicable) for a **Pollution Condition** arising out of the rendering of or failure to render **Professional Services** or the performance of or failure to perform **Contracting Services** on or after the Retroactive Date set forth in Item 6 of the Declarations and before the end of the **Policy Period** by the **Assured** or by any person, including an independent contractor, for whose **Pollution Condition** the **Assured Organization** is legally responsible.

The Insuring Agreements C, D, E and F below only apply if Item 7 of the Declarations indicates that these Insuring Agreements have been purchased.

C. **Technology Based Services**

To pay on behalf of the **Assured Damages** and **Claims Expenses,** in excess of the Deductible, which the **Assured** shall become legally obligated to pay because of any **Claim** first made against the **Assured** during the **Policy Period** or **Optional Extension Period** (if applicable) and reported to Underwriters either during the **Policy Period**, within sixty (60) days after the expiration of the **Policy Period** or during the **Optional Extension Period** (if applicable) arising out of any negligent act, error or omission, or any unintentional breach of contract, in rendering or failure to render **Technology Based Services** on or after the Retroactive Date set forth in Item 6 of the Declarations and before the end of the **Policy Period** by the **Assured** or by any person, including an independent contractor, for whose negligent act, error or omission or unintentional breach of contract the **Assured Organization** is legally responsible.

D. **Technology Products**

To pay on behalf of the **Assured Damages** and **Claims Expenses**, in excess of the Deductible, which the **Assured** shall become legally obligated to pay because of any Claim first made against any **Assured** during the **Policy Period** or **Optional Extension Period** (if applicable) and reported to Underwriters either during the **Policy Period**, within sixty (60) days after the expiration of the **Policy Period** or during the **Optional Extension Period** (if applicable) arising out of any negligent act, error or omission, or any unintentional breach of contract, by the **Assured** on or after the Retroactive Date set forth in Item 6 of the Declarations and before the end of the **Policy Period** that results in the failure of **Technology Products** to perform the function or serve the purpose intended.



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER<br>B0509FINPS1700245 | | Page **10** of **55** |

E. **Computer Network Security**

To pay on behalf of the **Assured Damages** and **Claims Expenses**, in excess of the Deductible, which the **Assured** shall become legally obligated to pay because of any **Claim** first made against any **Assured** during the **Policy Period** or **Optional Extension Period** (if applicable) and reported to Underwriters either during the **Policy Period**, within sixty (60) days after the expiration of the **Policy Period** or during the **Optional Extension Period** (if applicable) arising out of any act, error or omission on or after the Retroactive Date set forth in Item 6 of the Declarations and before the end of the **Policy Period** in the course of providing or managing **Computer Systems** security by the **Assured** or by any person, including an independent contractor, for whose act, error or omission the **Assured Organization** is legally responsible that results in:

1.  the inability of a third party, who is authorized to do so, to gain access to **Computer Systems** or your **Technology Based Services**;

2.  the failure to prevent **Unauthorized Access** to **Computer Systems** that results in:

    (a)  the destruction, deletion or corruption of electronic data on **Computer Systems**;

    (b)  **Theft of Data** from Computer Systems; or

    (c)  denial of service attacks against Internet sites or computers; or

3.  the failure to prevent transmission of **Malicious Code** from **Computer Systems** to third party computers and systems.

F. **Multimedia and Advertising**

To pay on behalf of the **Assured Damages** and **Claims Expenses**, in excess of the Deductible, which the **Assured** shall become legally obligated to pay because of liability imposed by law or **Assumed Under Contract** resulting from any **Claim** first made against any **Assured** during the **Policy Period** or **Optional Extension Period** (if applicable) and reported to Underwriters either during the **Policy Period**, within sixty (60) days after the expiration of the **Policy Period** or during the **Optional Extension Period** (if applicable) arising out of one or more of the following acts committed on or after the Retroactive Date set forth in Item 6 of the Declarations and before the end of the **Policy Period** in the course of the **Assured Organization's** performance of **Professional Services**, **Media Activities** or **Technology Based Services**:



Contract Leader



| **MARSH LTD** | | |
|---|---|---|
| CONTRACT NUMBER<br>B0509FINPS1700245 | | Page **11** of **55** |

1. defamation, libel, slander, product disparagement, trade libel, prima facie tort, infliction of emotional distress, outrage, outrageous conduct, or other tort related to disparagement or harm to the reputation or character of any person or organization;

2. invasion of or interference with the right to privacy or of publicity;

3. misappropriation of any name or likeness for commercial advantage;

4. false arrest, detention or imprisonment or malicious prosecution;

5. invasion of or interference with any right to private occupancy, including trespass, wrongful entry, eviction or eavesdropping;

6. plagiarism, piracy or misappropriation of ideas under implied contract;

7. infringement of copyright;

8. infringement of trade dress, domain name, title or slogan, or the dilution or infringement of trademark or service mark;

9. negligence regarding the content of any **Media Communication**, including harm caused through any reliance or failure to rely upon such content; or

10. misappropriation of trade secret.

Provided, Insuring Agreements A, B, C, D, E and F of this Insurance shall not apply to any **Claim** for or arising out of the disclosure, misuse or misappropriation of any ideas, trade secrets or confidential information that came into the possession of any person prior to the date he or she became an employee, officer, director, principal or partner of the **Assured Organization**.

**II.     SUPPLEMENTARY PAYMENTS**

All payments made under this Clause are not subject to the Deductible and are payable by the Underwriters in addition to the Limits of Liability.

A.     Pre-Claims Assistance

If the **Assured** reports **a Circumstance** during the **Policy Period**, in accordance with Clause XII.B, until such time a **Claim** is made, any costs or expenses the Underwriters incur as a result of investigating or monitoring such **Circumstance,** will be paid for by the Underwriters. The decision to incur any costs or expenses to monitor or investigate such **Circumstance** shall be at the sole discretion of the Underwriters.



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER<br>B0509FINPS1700245 | | Page **12** of **55** |

B.    Defendants Reimbursement

Upon the Underwriter's request, the **Assured** shall attend mediation meetings, arbitration proceedings, hearings, depositions and trials relative to the defense of a **Claim**. After the first three (3) days attendance required for each **Claim**, the Underwriters shall reimburse the **Assured**, upon written request, for actual loss of earnings and reasonable expenses due to such attendance up to $400 for each day in the aggregate for all **Assureds** subject to a maximum amount of $7,500 for each **Claim**.

C.    ADA, FHA, OSHA Regulatory / Administrative Actions Reimbursement

Underwriters will reimburse the **Assured**, upon written request, for legal fees and expenses up to $25,000 in the aggregate for the **Policy Period**, incurred by the **Assured** with the prior written consent of the Underwriters, in responding to a regulatory or administrative action brought directly against the **Assured** during the **Policy Period** by a government agency under the Americans with Disabilities Act of 1990 (ADA), the Fair Housing (FHA) or the Occupational Safety and Health Act (OSHA) provided that the regulatory or administrative action:

1.    arises out of the rendering of or failure to render **Professional Services**; and

2.    is reported to the Underwriters during the **Policy Period**.

After the Underwriters have paid $25,000 under this Clause, the Underwriters shall not be obligated to pay any further legal fees and expenses.

D.    Disciplinary Proceedings Reimbursement

Underwriters will reimburse the **Assured**, upon written request, for legal fees and expenses up to $7,500 in the aggregate for the **Policy Period**, incurred by the **Assured** with the prior written consent of the Underwriters,  in responding to a disciplinary proceeding brought directly against the **Assured** during the **Policy Period** provided that the disciplinary proceeding:

1.    arises out of the rendering of or failure to render **Professional Services**; and

2.    is reported to the Underwriters during the **Policy Period**.

After the Underwriters have paid $7,500 under this Clause, the Underwriters shall not be obligated to pay any further legal fees and expenses.





Contract Leader

| MARSH LTD | | |
| --- | --- | --- |
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **13** of **55** |

## III.   DEFENSE, SETTLEMENT, AND INVESTIGATION OF CLAIMS

A.   The Underwriters shall have the right and duty to defend, subject to the Limit of Liability, exclusions and other terms and conditions of this Policy, any **Claim** against the **Assured** seeking **Damages** which are payable under the terms of this Policy, even if any of the allegations of the **Claim** are groundless, false or fraudulent.

B.   The Underwriters shall have the right and duty to defend, subject to the Limit of Liability, exclusions, and other terms and conditions of this Policy, any **Claim** in the form of a civil suit against the **Assured** that seeks injunctive relief (meaning a temporary restraining order or a preliminary or permanent injunction) for one or more of the acts listed in Insuring Agreement F if:

   1.   the **Claim** is first made during the **Policy Period** or **Optional Extension Period** (if applicable) and reported to the Underwriters pursuant to the terms of this Policy; and

   2.   the act or acts were committed on or after the Retroactive Date and before the end of the **Policy Period** in the course of the **Assured Organization's** performance of **Professional Services**, **Media Activities** or **Technology Based Services**.

C.   When the Underwriters defend a **Claim**, they will pay **Claims Expenses** incurred with their prior written consent.  The Limit of Liability available to pay **Damages** shall be reduced and may be completely exhausted by payment of **Claims Expenses**.  **Damages** and **Claims Expenses** shall be applied against the Each **Claim** Deductible.

D.   The Underwriters shall have the right to make any investigation they deem necessary, including, without limitation, any investigation with respect to the **Application** and statements made in the **Application** and with respect to coverage.

   However, notwithstanding the above, the **Assured's** rights under this Policy shall not be prejudiced by any refusal to disclose the identity of any confidential source of information, or to produce any documentation or information obtained in the course of **Media Activities** in respect of which the **Assured** has asserted a claim of reporter's privilege or any other privilege regarding the protection of news-gathering activities.



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **14** of **55** |

E. If the **Assured** shall refuse to consent to any settlement or compromise recommended by the Underwriters and acceptable to the Claimant and elects to contest the **Claim**, the Underwriters' liability for any **Damages** and **Claims Expenses** shall not exceed the amount for which the **Claim** could have been settled, less the remaining Each **Claim** Deductible, plus the **Claims Expenses** incurred up to the time of such refusal, or the applicable Limit of Liability, whichever is less, and the Underwriters shall have the right to withdraw from the further defense thereof by tendering control of said defense to the **Assured**. The portion of any proposed settlement or compromise that requires the **Assured** to cease, limit or refrain from actual or alleged infringing or otherwise injurious activity or is attributable to future royalties or other amounts that are not **Damages** shall not be considered in determining the amount for which a **Claim** could have been settled.

F. It is further provided that the Underwriters shall not be obligated to pay any **Damages** or **Claims Expenses**, or to undertake or continue defense of any suit or proceeding after the applicable Limit of Liability has been exhausted by payment of **Damages** and/or **Claims Expenses** or after deposit of the applicable Limit of Liability in a court of competent jurisdiction, and that upon such payment, the Underwriters shall have the right to withdraw from the further defense thereof by tendering control of said defense to the **Assured**.

## IV. THE ASSURED AND THE ASSURED ORGANIZATION

As used throughout this Policy, whether expressed in singular or plural, 'Assured' shall mean:

A. the Named Assured and any **Subsidiaries** of the Named Assured (together the **'Assured Organization'**);

B. a director or officer of the **Assured Organization**, but only with respect to the performance of his or her duties as such on behalf of the **Assured Organization**;

C. an employee or temporary employee of the **Assured Organization**, but only for work done while acting within the scope of his or her employment and related to the conduct of the **Assured Organization's** business;

D. a principal if the Named Assured is a sole proprietorship, or a partner if the Named Assured is a partnership, but only with respect to the performance of his or her duties as such on behalf of the **Assured Organization**;

E. any person who previously qualified as an **Assured** under B, C or D above prior to the termination of the required relationship with the **Assured Organization**, but only with respect to the performance of his or her duties as such on behalf of the **Assured Organization**;





Contract Leader

| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **15** of 55 |

F.    the estate, heirs, executors, administrators, assigns and legal representatives of any **Assured** in the event of such **Assured's** death, incapacity, insolvency or bankruptcy, but only to the extent that such **Assured** would otherwise be provided coverage under this Insurance;

G.    any joint venture in which the **Assured Organization** participates in, but solely for the **Assured Organization's** liability that arises out of a negligent act, error or omission in rendering or failure to render **Professional Services** by or on behalf of the **Assured Organization** or for a **Pollution Condition** that arises out of the rendering of or failure to render **Professional Services** or the performance of or failure to perform **Contracting Services** by or on behalf of the **Assured Organization**; and

H.    solely with respect to Insuring Agreement B, the client for whom the **Assured Organization** renders or rendered **Professional Services** or performs or performed **Contracting Services**, provided that a written contract or agreement is in effect between the **Assured Organization** and the client requiring the client to be an additional assured under the **Assured Organization's** architects, engineers and contractors pollution liability policy. However, such clients are covered under Insuring Agreement B of this Policy solely with respect to **Damages** and **Claims Expenses** arising from **Professional Services** rendered or **Contracting Services** performed by or on behalf of the **Assured Organization** and are not covered for any **Damages** and **Claims Expenses** arising from the client's own acts, errors or omissions.  Clients of the **Assured Organization** are covered under Insuring Agreement B of this Policy, subject to Clause IX, only for the Limits of Liability required by the written contract or agreement.

**V.    TERRITORY**

This Policy applies to **Claims** made and acts, errors or omissions or **Pollution Conditions** committed or arising anywhere in the world.

**VI.    EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS**

The coverage under this Insurance does not apply to **Damages** or **Claims Expenses** in connection with or resulting from any Claim:

A.    **Criminal, Dishonest, Intentional, Fraudulent, Malicious, Willful or Knowing Acts**



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER<br>B0509FINPS1700245 | | Page **16** of 55 |

arising out of or resulting from any criminal, dishonest, intentional, fraudulent, malicious, willful or knowing act, error or omission committed by any **Assured**; however, this Policy shall apply to **Claims Expenses** incurred in defending any such **Claim** alleging the foregoing until such time as there is a final adjudication, judgment, binding arbitration decision or conviction against the **Assured**, or admission by the **Assured**, establishing such criminal, dishonest, intentional, fraudulent, malicious willful or knowing conduct, or a plea of *nolo contendere* or no contest regarding such conduct, at which time the Named Assured shall reimburse Underwriters for all **Claims Expenses** incurred defending the **Claim** and Underwriters shall have no further liability for **Claims Expenses**.

Provided, that this exclusion shall not apply to any **Claim** based upon or arising from the **Assured's** unintentional breach of a written agreement to refrain from disclosing confidential or proprietary information in rendering or failure to render **Professional Services** or in the performance of or failure to perform **Contracting Services**.

B.    **Prior Knowledge, Prior Notice and Prior Acts**

1.    arising out of or resulting from any act, error or omission or **Pollution Condition** committed or arising prior to the inception date of this Insurance:

(a)    if any director, officer, principal, partner, insurance manager or any member of the risk management or legal department of the **Assured Organization** on or before the inception date knew or could have reasonably foreseen that such act, error or omission or **Pollution Condition** might be expected to be the basis of a **Claim**; or

(b)    in respect of which any **Assured** has given notice of a **Circumstance** to the insurer of any other policy in force prior to the inception date of this Policy; or

2.    arising out of related or continuing acts, errors or omissions or **Pollution Conditions** where the first such act, error or omission or **Pollution Condition** was committed or arose prior to the Retroactive Date set forth in Item 6 of the Declarations.

C.    **Assured versus Assured**

by or on behalf of one or more **Assureds** under this Insurance against any other **Assured** or **Assureds** under this Insurance; provided, that this exclusion shall not apply to a **Claim** by or on behalf of any client of the **Assured Organization** who is an **Assured** by virtue of Clause IV.H.





| **MARSH LTD** | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **17** of **55** |

D.    **Ownership Interest and Outside Positions**

1.    arising out of or resulting from any **Assured's** activities as a trustee, partner, officer, director or employee of any employee trust, charitable organization, corporation, company or business other than that of the **Assured Organization**; or

2.    made by any entity, arising out of **Professional Services, Contracting Services, Media Activities** or **Technology Based Services** performed for such entity, or **Technology Products** provided to such entity which:

(a)    is operated, managed or controlled by an **Assured** or in which any **Assured** has an ownership interest in excess of 25%; or in which any **Assured** is an officer or director; or

(b)    operates, controls or manages the Named Assured, or has an ownership interest of more than 15% in the Named Assured.

E.    **Discrimination, Humiliation, Harassment and Misconduct**

for or arising out of or resulting from any actual or alleged discrimination, humiliation, harassment or misconduct because of age, color, race, sex, creed, national origin, marital status, sexual preference or orientation, religion, disability or pregnancy; provided, that this exclusion shall not apply to any **Claim** based upon the Americans with Disabilities Act of 1990 (ADA), as amended, or the Fair Housing Act (FHA), or any state or local versions of those acts, and arising out of the **Assured's** rendering or failure to render **Professional Services**.

F.    **Assumption of Contractual Liability of Others**

arising out of or resulting from the liability of others assumed by the **Assured** under any contract or agreement either oral or written, including any hold harmless or indemnity agreements, except:

1.    with respect to Insuring Agreement F for liability **Assumed under Contract**; or

2.    to the extent the **Assured** would have been liable in the absence of such contract or agreement.

G.    **Express Warranties, Representations, Guarantees and Promises**

for or arising out of or resulting from:


Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER<br>B0509FINPS1700245 | | Page **18** of **55** |

1.   breach of any express warranty or representation except for an agreement to perform within a reasonable standard of care or skill consistent with applicable industry standards; or

2.   breach of guarantee or any promises of cost savings, profits, or return on investment.

**H.   Faulty Workmanship**

under Insuring Agreement A arising out of the cost to repair or replace any faulty workmanship performed in whole or in part by any **Assured** on any construction, erection, fabrication, installation, assembly, manufacture or remediation, including any materials, parts, labor or equipment furnished in connection with such repair or replacement.

**I.   Asbestos**

either in whole or in part, directly or indirectly, arising out of or resulting from or in consequence of, or in any way involving asbestos, or any materials containing asbestos in whatever form or quantity; provided, that this exclusion does not apply to any **Claim** arising out of any negligent act, error or omission in rendering or failure to render **Professional Services** on or after 1st January 1990 or the Retroactive Date set forth in Item 6 of the Declarations (whichever is the later) by or on behalf of the **Assured**.

**J.   Employers Liability**

for or arising out of or resulting from:

1.   **Bodily Injury** to any employee of the **Assured Organization** arising out of and in the course of employment by the **Assured Organization**; or

2.   the **Assured Organization's** employment obligations, decisions, practices or policies as an employer.

**K.   Worker's Compensation**

arising out of any obligation which the **Assured** or any carrier as insurer may be liable under any worker's compensation, unemployment compensation or disability benefits law or similar law.

**L.   Property Liability**

arising out of or resulting from the **Assured's** ownership, rental, lease, maintenance, operation, use, repair, voluntary or involuntary sale, transfer, exchange, gift, abandonment or condemnation of any real or personal property including without limitation, automobiles, aircraft, watercraft and other kinds of conveyances.



Contract Leader



| **MARSH LTD** | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **19** of **55** |

M.     **Products Liability**

arising out of or resulting from the design or manufacture of any goods or products for multiple sales or mass distribution which are sold or supplied by the **Assured** or by others under license from the **Assured**; provided, that this exclusion shall not apply to any **Claim** which is covered pursuant to Insuring Agreement D of this Policy.

N.     **Transportation, Shipment or Delivery of Waste, Products or Materials**

under Insuring Agreement B arising out of or resulting from any waste or any products or materials transported, shipped or delivered via watercraft, aircraft, motor vehicle, mobile equipment or rolling stock to a location beyond the boundaries of a site at which **Professional Services** are being rendered or **Contracting Services** are being performed.

O.     **Property Damage to Assured Organization's Work and Products**

under Insuring Agreement B for any **Property Damage**:

1.     to work performed by or on behalf of the **Assured Organization** resulting from the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith; or

2.     to any goods or products which are sold or supplied by the **Assured** or by others under license from the **Assured** resulting from such goods or products or any portion thereof.

P.     **Patent Infringement**

for or arising out of actual or alleged infringement of patent or patent rights or misuse of patent.

Q.     **Failure to Maintain Insurance**

arising out of or resulting from the advising or requiring of, or failure to advise or require, or failure to maintain any form of insurance, suretyship or bond, either with respect to the **Assured** or any other person or entity.

R.     **Insolvency and Bankruptcy**

arising out of or resulting from the insolvency or bankruptcy of any **Assured** or of any other entity including but not limited to the failure, inability, or unwillingness to pay **Claims**, losses, or benefits due to the insolvency, liquidation or bankruptcy of any such individual or entity.



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER<br>B0509FINPS1700245 | | Page **20** of **55** |

S.  **War and Terrorism**

directly or indirectly caused by, resulting from or in connection with:

1.  any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

    (a)  war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war is declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

    (b)  any act of terrorism.

2.  any action taken in controlling, preventing, suppressing or in any way relating to (a) or (b) above.

For the purpose of this exclusion, an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

If the Underwriters allege that by reason of this exclusion, any **Damages** or **Claims Expenses** are not covered by this Insurance, the burden of proving the contrary shall be upon the **Assured**.

In the event any portion of this exclusion is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

VII.  **EXCLUSIONS APPLICABLE TO INSURING AGREEMENTS C, D, E AND F**

The coverage under Insuring Agreements C, D, E and/or F of this Insurance does not apply to **Damages** or **Claims Expenses** in connection with or resulting from any **Claim**:

A.  **Bodily Injury and Property Damage**

for, arising out of, or resulting from **Bodily Injury** or **Property Damage**.

B.  **Contractual Liability**

arising out of or resulting from:



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **21** of **55** |

1. any contractual liability or obligation, or arising out of or resulting from breach of contract or agreement either oral or written, except:

   (a) with respect to:

      (i) Insuring Agreement C for breach of an agreement by the **Assured Organization** to perform **Technology Based Services**; or

      (ii) Insuring Agreement D for breach of an agreement by the **Assured Organization** to manufacture, develop, create, distribute, license, lease or sell **Technology Products**;

      provided, this exception VII.B.1(a) shall not apply to breach of any hold harmless or indemnity agreement;

   (b) with respect to Insuring Agreement F for liability:

      (i) **Assumed under Contract**; or

      (ii) misappropriation of ideas under an implied contract; or

   (c) to the extent the **Assured** would have been liable in the absence of such contract or agreement; or

2. breach of any contractual obligation which goes beyond an express or implied duty to exercise a degree of care or skill as is consistent with applicable industry standards.

**C.**    **Business Risks**

for or arising out of or resulting from:

1. inaccurate, inadequate or incomplete description of the price of goods, products or services;

2. cost guarantees, cost representations, or contract price estimates of probable costs or cost estimates actually or allegedly being exceeded;

3. the failure of goods, products, or services to conform with any represented quality or performance contained in **Advertising**; or

4. any actual or alleged gambling, contest, lottery, promotional game or other game of chance.



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER<br>B0509FINPS1700245 | | Page **22** of **55** |

D.   **Licensing Fees and Royalty Payments**

arising out of or resulting from any actual or alleged obligation to make licensing fee or royalty payments, including but not limited to the amount or timeliness of such payments.

E.   **Reprinting, Recall, Removal, Disposal, Withdrawal, Inspection, Repair, Replacement, Reproduction Costs and Expenses**

for or arising out of or resulting from any costs or expenses incurred or to be incurred by the **Assured** or others for:

1.   the reprinting, recall, removal or disposal of any **Media Material**, including any media or products containing such **Media Material**; or

2.   the withdrawal, recall, inspection, repair, replacement, reproduction, removal or disposal of:

    (a)   **Technology Products**, including any products or other property of others that incorporate **Technology Products**;

    (b)   work product resulting from or incorporating the results of **Technology Based Services**; or

    (c)   any products or other property on which **Technology Based Services** are performed;

provided, that this exclusion shall not apply to **Claims** for the resulting loss of use of such **Media Material** or **Technology Products**, or loss of use of the work product resulting from such **Technology Based Services**.

F.   **Computer Systems Security**

arising out of or resulting from:

1.   the failure of **Computer Systems** to be protected by security practices and procedures equal to or superior to those disclosed in response to questions in the **Application** relating to **Computer Systems** security, including access protection, intrusion detection, data back up procedures, **Malicious Code** protection, and data encryption procedures; or

2.   the failure to install available software product updates and releases, or to apply security related software patches, to computers and other components of **Computer Systems**.



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **23** of **55** |

G. **Electrical and Telecommunications Failure and Malfunction and Force Majure**

arising out of, resulting from or alleging:

1. any failure or malfunction of electrical or telecommunications infrastructure or services, unless under the **Assured Organization's** operational control; or

2. fire, flood, earthquake, volcanic eruption, explosion, lightning, wind, hail, tidal wave, landslide, act of God or other physical or force majure event.

H. **Antitrust**

for or arising out of any actual or alleged antitrust violation, restraint of trade, unfair competition, violation of the Sherman Antitrust Act, the Clayton Act, the Robinson-Patman Act, as amended, or any similar law or legislation of any state, province or other jurisdiction, false, deceptive or unfair trade practices, violation of consumer protection laws or false or deceptive or misleading advertising.

I. **Federal Trade Commission and Federal Communications Commission**

brought by or on behalf of the Federal Trade Commission, the Federal Communications Commission, or any similar governmental entity, in such entity's regulatory or official capacity.

J. **Copyright and Trade Secret Infringement of Technology Products**

for or arising out of actual or alleged infringement of copyright or misappropriation of trade secret arising out of or related to **Technology Products**.

K. **Electromagnetic Fields and Radiation**

for or arising out of or resulting from the existence, emission or discharge of any electromagnetic field, electromagnetic radiation or electromagnetism that actually or allegedly affects the health, safety or condition of any person or the environment, or that affects the value, marketability, condition or use of any property.

L. **Delay in Delivery or Performance**

for or arising out of or resulting from delay in delivery or performance, or failure to deliver or perform at or within an agreed upon period of time.



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **24** of **55** |

## VIII.  DEFINITIONS

Wherever used in this Policy in bold face type, the following definitions shall apply.

A.    '**Advertising**' means material which promotes the product, service or business of the **Assured Organization** or others.

B.    '**Application**' means all signed applications, including all attachments and other materials submitted therewith or incorporated therein, and any other such documents submitted in connection with the underwriting of this Policy including any endorsement or other part thereof, or any other policy issued by Underwriters, of which this Policy is a renewal, replacement or which it succeeds in time.

C.    '**Assumed Under Contract**' means liability assumed by the **Assured Organization** under a written hold harmless or indemnity agreement regarding the content of **Media Material** used in a **Media Communication**, but only as respects acts for which insurance is afforded under Insuring Agreement F.

D.    '**Bodily Injury**' means physical injury, sickness, disease or death of any person, including any mental anguish or emotional distress resulting therefrom.

E.    '**Circumstance**' means any fact, event or situation that could reasonably be the basis for a **Claim**.

F.    '**Claim**' means a demand received by any **Assured** for money or services including the service of suit or institution of arbitration proceedings.  '**Claim**' shall also mean a threat or initiation of a suit seeking injunctive relief (meaning a temporary restraining order or a preliminary or permanent injunction).

Multiple **Claims** arising from the same or a series of related or repeated acts, errors, omissions or **Pollution Conditions** or from any continuing acts, errors, omissions or **Pollution Conditions** shall be considered a single **Claim** for the purposes of this Policy, irrespective of the number of Claimants or **Assureds** involved in the **Claim**.  All such **Claims** shall be deemed to have been made at the time of the first such **Claim**.

G.    '**Claims Expenses**' means:

1.    reasonable and necessary fees charged by an attorney designated or consented to by the Underwriters;

2.    all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim**, suit or proceeding arising in connection therewith, if incurred by the Underwriters, or by the **Assured** with the prior written consent of the Underwriters; and



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **25** of **55** |

3.  premiums for appeal bonds for covered judgments or bonds to release property used to secure a legal obligation, if required for a **Claim** against any **Assured** for a covered act, error or omission, provided however that the Underwriters shall have no obligation to appeal or to obtain such bonds.

**Claims Expenses** do not include any salary, overhead or other charges of or by the **Assured** for any time spent in cooperating in the defense and investigation of any **Claim** notified under this Insurance.

H.  '**Cleanup Costs**' means reasonable and necessary costs, charges and expenses incurred with the prior written consent of the Underwriters in the investigation, removal or neutralization of a **Pollution Condition**, provided that such costs, charges and expenses are caused by a **Pollution Condition** arising out of the rendering of or failure to render **Professional Services** or the performance of or failure to perform **Contracting Services** by or on behalf of the **Assured Organization**.

I.  '**Computer Systems**' means computers and associated input and output devices, data storage devices, networking equipment, and back up facilities:

1.  operated by and either owned by or leased to the **Assured Organization**; or

2.  operated by a third party service provider and used for the purpose of providing hosted computer application services to the **Assured Organization** or for processing, maintaining, hosting or storing the **Assured Organization's** electronic data, pursuant to written contract with the **Assured Organization** for such services.

J.  '**Contracting Services**' means the performance of construction, drilling or remediation activities by or on behalf of the **Assured Organization**.

K.  '**Damages**' means a monetary judgment, award or settlement of compensatory damages, including any pre-judgment and/or post-judgment interest thereon.

The term **Damages** shall not include or mean:

1.  future profits, restitution, disgorgement of unjust enrichment or profits by an **Assured**, or the costs of an **Assured** to comply with orders granting injunctive or equitable relief;

2.  return or offset of fees, charges, or commissions for goods or services already provided or contracted to be provided;

3.  costs incurred by the **Assured** to correct, re-perform or complete any **Media Activities** or **Technology Based Services**;



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **26** of **55** |

4.  any damages which are a multiple of compensatory damages;

5.  fines, taxes or loss of tax benefits, sanctions or penalties assessed against the **Assured**;

6.  punitive or exemplary damages, unless insurable by law under the law under which this Policy is construed;

7.  discounts, coupons, prizes, awards or other incentives offered to the **Assured's** customers or clients;

8.  liquidated damages to the extent that such damages exceed the amount for which the **Assured** would have been liable in the absence of such liquidated damages agreement; or

9.  any amounts for which the **Assured** is not liable, or for which there is no legal recourse against the **Assured**.

L.   **'Malicious Code'** means any virus, Trojan Horse, worm or other similar software program, code or script intentionally designed to insert itself into computer memory or onto a computer disk and spread itself from one computer to another.

M.   **'Media Communication'** means the display, broadcast, dissemination, distribution or release of **Media Material** to the public by the **Assured Organization.**

N.   **'Media Material'** means information in the form of words, sounds, numbers, images, or graphics in electronic, print or broadcast form, including **Advertising**, but does not mean computer software.

O.   **'Media Activities'** means **Media Communications** and/or the gathering, collection or recording of **Media Material** for inclusion in any **Media Communication** in the ordinary course of the **Assured Organization's** business.

P.   **'Optional Extension Period'** means the period of time after the end of the **Policy Period** for reporting **Claims** as provided in Clause XIII of this Policy.

Q.   **'Policy Period'** means the period of time between the inception date shown in the Declarations and the effective date of termination, expiration or cancellation of this Insurance and specifically excludes any **Optional Extension Period** or any prior policy period or renewal period.

R.   **'Pollution Condition'** means the actual or alleged discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water, which results in **Bodily Injury**, **Property Damage** or **Cleanup Costs**.



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER<br>B0509FINPS1700245 | | Page **27** of **55** |

S.    **'Professional Services'** means those services performed for others by or on behalf of the **Assured Organization** in the practice of architecture, engineering, land surveying, landscape architecture, interior design, construction management or environmental consulting.

T.    **'Property Damage'** means:

    1.    physical injury to or destruction of any tangible property, including the loss of use thereof; or

    2.    loss of use of tangible property that has not been physically injured or destroyed.

U.    **'Subsidiary'** means any corporate entity while more than 50% of the outstanding securities representing the present right to vote for the election of such entity's directors are owned by the Named Assured directly or indirectly, if such entity was so owned on the inception date of this Policy; or:

    1.    was so owned prior to the inception date of this Policy and was insured under a policy issued by Underwriters of which this Policy is a renewal;

    2.    becomes so owned after the inception date of this Policy provided the revenues of the entity do not exceed 10% of the Named Assured's Annual Revenues as set forth in their most recent **Application**; or

    3.    becomes so owned after the inception date of this Policy provided that if the revenues of the entity exceed 10% of the Named Assured's Annual Revenues as set forth in their most recent **Application**, the provisions of Clause XVIII.A., must be fulfilled.

Provided that this Policy only provides coverage for acts, errors or omissions or **Pollution Conditions** taking place while the corporate entity is so owned by the Named Assured.

V.    **'Technology Based Services'** means computer and electronic technology services, including data processing, Internet services, data and application hosting, computer systems analysis, technology consulting and training, custom software programming for a specific client of the **Assured Organization**, computer and software systems installation and integration, computer and software support, and network management services performed by the **Assured**, or by others acting under the **Assured Organization's** trade name, for others for a fee, but shall not mean **Technology Products**.


Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **28** of **55** |

W. **'Technology Products'** means a computer or telecommunications hardware or software product, or related electronic product that is created, manufactured or developed by the **Assured Organization** for others, or distributed, licensed, leased or sold by the **Assured Organization** to others, for compensation, including software updates, service packs and other maintenance releases provided for such products.

X. **'Theft of Data'** means the unauthorized taking, misuse or disclosure of information on **Computer Systems**, including but not limited to charge, debit, and credit card information, banking, financial, and investment services account information, proprietary information, and personal, private, and confidential information.

Y. **'Unauthorized Access'** means:

1. the use of or access to **Computer Systems** by a person not authorized to do so by the **Assured Organization**; or

2. the authorized use of or access to **Computer Systems** in a manner not authorized by the **Assured Organization.**

## IX.  LIMIT OF LIABILITY

A. The Limit of Liability stated in Item 3(a) of the Declarations for 'Each **Claim**' is the limit of the Underwriters' liability for all **Damages** and **Claims Expenses** arising out of each **Claim**.

B. The 'Aggregate for the **Policy Period**' stated in Item 3(b) of the Declarations is the Underwriters' combined total Limit of Liability for all **Damages** and **Claims Expenses** arising out of all **Claims** or **Circumstances** which are covered under the terms and conditions of this Policy, and neither the inclusion of more than one **Assured** under this Policy, nor the making of **Claims** by more than one person or entity shall increase the Limit of Liability.

C. The Limit of Liability for the **Optional Extension Period** shall be part of and not in addition to the Limit of Liability of the Underwriters for the **Policy Period**.



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **29** of **55** |

## X.   DEDUCTIBLE

The 'Each **Claim** Deductible' stated in Item 4 of the Declarations applies separately to each **Claim**.  The Each **Claim** Deductible shall be satisfied by monetary payments by the Named Assured of **Damages** and **Claims Expenses** resulting from **Claims** first made during the **Policy Period** and the **Optional Extension Period** and reported to the Underwriters pursuant to the terms of this Policy.  Satisfaction of the Each **Claim** Deductible is a condition precedent to the payment by the Underwriters of any amounts hereunder, and the Underwriters shall be liable only for the amounts in excess of the Each **Claim** Deductible subject to the Underwriters' total liability not exceeding the Limits of Liability stated in Items 3(a) and 3(b) of the Declarations. The Named Assured shall make direct payments within the Each **Claim** Deductible to appropriate other parties designated by the Underwriters.

## XI.   INNOCENT ASSURED

A.    Whenever coverage under this Insurance would be excluded, suspended or lost because of Exclusion VI.A relating to criminal, dishonest, intentional, fraudulent, malicious, willful or knowing acts, errors or omissions by any **Assured**, and with respect to which any other **Assured** did not personally participate or personally acquiesce or remain passive after having personal knowledge thereof, then the Underwriters agree that such insurance as would otherwise be afforded under this Policy shall cover and be paid with respect to those **Assureds** who did not personally commit or personally participate in committing or personally acquiesce in or remain passive after having personal knowledge of one or more of the acts, errors or omissions described in Exclusion VI.A.

This provision is inapplicable to any **Claim** or **Circumstance** against the **Assured Organization** arising from acts, errors or omissions known to any present or former principal, partner, director or officer of the **Assured Organization**.

B.    With respect to this provision, the Underwriters' obligation to pay in such event shall only be in excess of the full extent of any recoverable assets of any **Assured** to whom Exclusion VI.A applies and shall be subject to the terms, conditions and limitations of this Policy.

## XII.   NOTICE OF CLAIM OR CIRCUMSTANCE

A.    If any **Claim** is made against an **Assured**, the **Assured** shall forward as soon as practicable to the Underwriters through the persons named in Item 9 of the Declarations written notice of such **Claim** in the form of a telecopy, or express or certified mail together with every demand, notice, summons or other process received by the **Assured** or the **Assured's** representative, but in no event later than sixty (60) days after the expiration of the **Policy Period** or the last day of the **Optional Extension Period**, if purchased.



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **30** of **55** |

B.      If during the **Policy Period** any director, officer, principal, partner, insurance manager or any member of the risk management or legal department of the **Assured Organization** first becomes aware of any **Circumstance** and gives written notice to the Underwriters in the form of a telecopy, or express or certified mail through persons named in Item 9 of the Declarations as soon as practicable during the **Policy Period** of:

   1.      the specific details of the act, error or omission or **Pollution Condition** in the provision of **Professional Services, Contracting Services, Media Activities** or **Technology Based Services** or relating to **Technology Products** that gave rise to the **Circumstance**;

   2.      the injury or damage which may result or has resulted from the **Circumstance**; and

   3.      the facts by which such director, officer, principal, partner, insurance manager or any member of the risk management or legal department of the **Assured Organization** first became aware of the act, error or omission or **Pollution Condition**

then any subsequent **Claim** made against the **Assured** arising out of such **Circumstance** which is the subject of the written notice will be deemed to have been made at the time written notice complying with the above requirements was first given to the Underwriters.

C.      A **Claim** shall be considered to be reported to the Underwriters when written notice is first received by the Underwriters in the form of a telecopy, or express or certified mail through persons named in Item 9 of the Declarations of the **Claim** or of a **Circumstance** if provided in compliance with Clause B above.

D.      If any **Assured** shall make any **Claim** under this Policy knowing such **Claim** to be false or fraudulent, as regards amount or otherwise, this Policy shall become null and void and all coverage hereunder shall be forfeited.

## XIII.   OPTIONAL EXTENSION PERIOD

A.      If this Policy is cancelled or non-renewed by the Underwriters, then the Named Assured designated in Item 1 of the Declarations shall have the right, upon payment of an additional premium calculated at that percentage shown in Item 8(a) of the Declarations of the total premium for this Policy, to an extension of the coverage granted by this Policy with respect to any **Claim** first made against any **Assured** and reported in writing to the Underwriters during the period of time set forth in Item 8(b) of the Declarations after the end of the **Policy Period**, but only with respect to any act, error or omission or **Pollution Condition** committed or arising on or after the Retroactive Date and before the effective date of cancellation or non-renewal.



Contract Leader

| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page 31 of 55 |

B.     As a condition precedent to the right to purchase the **Optional Extension Period**, the total premium for this Policy must have been paid.  The right to purchase the **Optional Extension Period** shall terminate unless written notice together with full payment of the premium for the **Optional Extension Period** is given to the Underwriters within thirty (30) days after the effective date of cancellation or non-renewal.  If such notice and premium payment is not so given to the Underwriters, there shall be no right to purchase the **Optional Extension Period**.

C.     In the event of the purchase of the **Optional Extension Period**, the entire premium for the **Optional Extension Period** shall be deemed earned at its commencement.

D.     The Limit of Liability for the **Optional Extension Period** shall be part of and not in addition to the Limit of Liability of the Underwriters for the **Policy Period**.

E.     The offer of renewal terms, conditions or premiums different from those in effect prior to renewal shall not constitute a refusal to renew for purposes of this Clause XIII.

F.     All notices and premium payments made under this clause shall be directed to Underwriters through the entity named in Item 10 of the Declarations.

## XIV.     REPRESENTATIONS

By acceptance of this Policy, all **Assureds** agree that the statements contained in the **Application** are their agreements and representations, that they shall be deemed material to the risk assumed by the Underwriters, and that this Policy is issued in reliance upon the truth thereof.

The misrepresentation or non-disclosure of any matter by the **Assured** or its agent in the **Application** will render the Policy null and void and relieve the Underwriters from all liability under the Policy.

## XV.     OTHER INSURANCE

This Insurance shall apply in excess of:

A.     any other valid and collectible insurance available to any **Assured**, including, but not limited to, any project specific professional liability and/or contractors pollution liability insurance; and

AFB 23 of 19

Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **32** of **55** |

B.      any self insured retention or deductible portion thereof

unless such other insurance is written only as specific excess insurance over the Limit of Liability of this Policy.

XVI.   **ASSIGNMENT**

The interest hereunder of any **Assured** is not assignable.  If an **Assured** shall die or be adjudged incompetent, such insurance shall cover that **Assured's** legal representative as an **Assured** as would be permitted by this Policy.

XVII.  **CANCELLATION**

A.      The Named Assured may cancel this Policy by surrender thereof to the Underwriters through the entity named in Item 10 of the Declarations, or by mailing to the Underwriters through the entity named in Item 10 of the Declarations written notice stating when thereafter such cancellation shall be effective.   The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**.  Delivery of such written notice shall be equivalent to mailing.

B.      The Underwriters may cancel this Policy by mailing or delivering to the Named Assured at the address shown in the Declarations written notice stating when, not less than sixty (60) days thereafter, such cancellation shall be effective.   However, if the Underwriters cancel this Policy because the **Assured** has failed to pay a premium when due, this Policy may be cancelled by the Underwriters by mailing or delivering a written notice of cancellation to the Named Assured at the address shown in the Declarations stating when not less than ten (10) days thereafter such cancellation shall be effective. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**. Delivery of such written notice by the Underwriters shall be equivalent to mailing.

C.      If this Policy is cancelled pursuant to A hereinabove, the Underwriters shall retain the short rate portion of the premium hereon calculated in accordance with the Short Rate Cancellation Table set forth in Clause XXX of this Policy. If this Policy is cancelled pursuant to B hereinabove, the Underwriters shall retain the pro rata portion of the premium hereon.  Payment or tender of any unearned premium by the Underwriters shall not be a condition precedent to the effectiveness of cancellation.



Contract Leader

| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **33** of **55** |

## XVIII.  MERGERS AND ACQUISITIONS

A.   During the **Policy Period**, if the Named Assured or any **Subsidiary** acquires another entity whose annual revenues are more than ten percent (10%) of the Named Assured's total annual revenues as set forth in the most recent **Application**; then no **Assured** shall have coverage under this Policy for any **Claim** that arises out of any act, error or omission or **Pollution Condition**, whether committed or arising either before or after such acquisition:

    1.   by the acquired entity or any person employed by the acquired entity; or

    2.   involving or relating to the assets, liabilities, or **Computer Systems** of the acquired entity.

The foregoing provision shall not apply if the Named Assured gives the Underwriters written notice within sixty (60) days after the effective date of the acquisition, obtains the written consent of the Underwriters to extend coverage to such additional entities, assets or exposures, and agrees to pay any additional premium required by the Underwriters.

B.   If during the **Policy Period** the Named Assured consolidates or merges with another entity such that the Named Assured is not the surviving entity, is acquired by another entity, or sells substantially all of its assets to any other entity, then coverage under this Policy shall not apply to acts, errors or omissions or **Pollution Conditions** committed or arising subsequent to such consolidation, merger or acquisition and Underwriters shall retain the total premium for this Policy, such total premium to be deemed earned at the date of such consolidation, merger or acquisition.  The Named Assured shall provide written notice of such consolidation, merger or acquisition to the Underwriters as soon as practicable, together with such information as the Underwriters may require.

C.   All notices and premium payments made under this section shall be directed to the Underwriters through the entity named in Item 10 of the Declarations.

## XIX.  ASSISTANCE AND COOPERATION OF THE ASSURED

The **Assured** shall cooperate with the Underwriters in all investigations, including investigations regarding the **Application** for and coverage under this Policy.  The **Assured** shall execute or cause to be executed all papers and render all assistance as is requested by the Underwriters.  The **Assured** agrees not to take any action which in any way increases the Underwriters' exposure under the Policy.



Contract Leader

| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page 34 of 55 |

Upon the Underwriters' request, the **Assured** shall assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the **Assured** because of acts, errors or omissions or **Pollution Conditions** with respect to which insurance is afforded under this Policy; and the **Assured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.

The **Assured** shall not admit liability, make any payment, assume any obligations, incur any expense, enter into any settlement, stipulate to any judgment or award or dispose of any **Claim** without the written consent of the Underwriters.

Except as provided for in Clause II.B, expenses incurred by the **Assured** in assisting and cooperating with the Underwriters, as described above, do not constitute **Claims Expenses** and are not reimbursable under the Policy.

XX.    **ACTION AGAINST UNDERWRITERS**

No action shall lie against the Underwriters unless, as a condition precedent thereto, the **Assured** shall have fully complied with all of the terms of this Policy, nor until the amount of the **Assured's** obligation to pay shall have been fully and finally determined either by judgment against them or by written agreement between them, the claimant and the Underwriters.  Nothing contained herein shall give any person or organization any right to join the Underwriters as a party to any **Claim** against the **Assured** to determine their liability, nor shall the Underwriters be impleaded by the **Assureds** or their legal representative in any **Claim**.

XXI.    **SUBROGATION**

In the event of any payment under this Insurance, the Underwriters shall be subrogated to all the **Assureds'** rights of recovery therefore against any person or organization, and the **Assured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.  The **Assured** shall do nothing to prejudice such rights.  The Underwriters agree to waive their rights of recovery against any client of the **Assured Organization** for a **Claim** which is covered pursuant to Insuring Agreements A and/or B of this Policy to the extent the **Assured Organization** had, prior to such **Claim**, a written agreement to waive such rights. Any recoveries shall be applied first to subrogation expenses, second to **Damages** and **Claims Expenses** paid by the Underwriters, and third to the Each **Claim** Deductible.  Any additional amounts recovered shall be paid to the Named Assured.

XXII.    **ENTIRE AGREEMENT**

By acceptance of this Policy, all **Assureds** agree that this Policy embodies all agreements existing between them and the Underwriters relating to this Policy. Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or estop the Underwriters from asserting any right under the terms of this Policy, nor shall the terms of this Policy be waived or changed except by written endorsement issued to form a part of this Policy, signed by the Underwriters.

AFB 23 06 17

Contract Leader

| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **35** of **55** |

## XXIII.  VALUATION AND CURRENCY

All premiums, limits, deductibles, **Damages** and other amounts under this Policy are expressed and payable in the currency of the United States.  If judgment is rendered, settlement is denominated or another element of **Damages** under this Policy is stated in a currency other than United States dollars or if **Claims Expenses** are paid in a currency other than United States dollars, payment under this Policy shall be made in United States dollars at the rate of exchange published in the *Wall Street Journal* on the date the judgment becomes final or payment of the settlement or other element of **Damages** is due or the date such **Claims Expenses** are paid.

## XXIV.  BANKRUPTCY

Bankruptcy or insolvency of the **Assured** shall not relieve the Underwriters of its obligations nor deprive the Underwriters of its rights or defenses under this Policy.

## XXV.  AUTHORIZATION

By acceptance of this Policy, the **Assureds** agree that the Named Assured set forth at Item 1 of the Declarations will act on their behalf with respect to the giving and receiving of any notice provided for in this Policy, the payment of premiums and the receipt of any return premiums that may become due under this Policy, and the agreement to and acceptance of endorsements.

## XXVI.  SINGULAR FORM OF A WORD

Whenever the singular form of a word is used herein, the same shall include the plural when required by context.

## XXVII. HEADINGS

The descriptions in the headings and subheadings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

## XXVIII. SERVICE OF SUIT

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due under this Insurance, Underwriters hereon, at the request of the **Assured**, will submit to the jurisdiction of a Court of competent jurisdiction within the United States.   Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.  It is further agreed that service of process in such suit may be made upon Underwriters' representative, designated in Item 11 of the Declarations, and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.



| |
|---|
| Contract Leader |



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **36** of **55** |

The Underwriters' representative designated in Item 11 of the Declarations is authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the **Assured** to give a written undertaking to the **Assured** that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the **Assured** or any beneficiary hereunder arising out of this contract of Insurance, and hereby designate the Underwriters' representative, designated in Item 11 of the Declarations, as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## XXIX.  CHOICE OF LAW

Any disputes involving this Policy shall be resolved applying the law designated in Item 12 of the Declarations.

## XXX.  SHORT RATE CANCELLATION TABLE

Notwithstanding anything to the contrary contained herein and in consideration of the premium for which this Insurance is written it is agreed that in the event of cancellation thereof by the **Assured** the Earned Premium shall be computed as follows:

### SHORT RATE CANCELLATION TABLE

A. For insurances written for one year:

| Days Insurance in Force | | Per cent. of One Year Premium | Days Insurance in Force | | Per cent. of One Year Premium |
|---|---|---|---|---|---|
| 1 - 73 | ..................... | 30 | 206 - 209 | ..................... | 66 |
| 74 – 76 | ..................... | 31 | 210 – 214 | (7 months)... | 67 |
| 77 – 80 | ..................... | 32 | 215 – 218 | ..................... | 68 |
| 81 – 83 | ..................... | 33 | 219 – 223 | ..................... | 69 |
| 84 – 87 | ..................... | 34 | 224 – 228 | ..................... | 70 |
| 88 – 91 | (3 months)... | 35 | 229 – 232 | ..................... | 71 |
| 92 – 94 | ..................... | 36 | 233 – 237 | ..................... | 72 |
| 95 – 98 | ..................... | 37 | 238 – 241 | ..................... | 73 |
| 99 – 102 | ..................... | 38 | 242 – 246 | (8 months)... | 74 |
| 103 – 105 | ..................... | 39 | 247 – 250 | ..................... | 75 |
| 106 – 109 | ..................... | 40 | 251 – 255 | ..................... | 76 |
| 110 – 113 | ..................... | 41 | 256 – 260 | ..................... | 77 |
| 114 – 116 | ..................... | 42 | 261 – 264 | ..................... | 78 |
| 117 – 120 | ..................... | 43 | 265 – 269 | ..................... | 79 |



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page 37 of 55 |

| | | | | | |
|---|---|---|---|---|---|
| 121 – 124 | (4 months)… | 44 | 270 – 273 | (9 months)… | 80 |
| 125 - 127 | ……………… | 45 | 274 - 278 | ……………… | 81 |
| 128 – 131 | ……………… | 46 | 279 – 282 | ……………… | 82 |
| 132 – 135 | ……………… | 47 | 283 – 287 | ……………… | 83 |
| 136 – 138 | ……………… | 48 | 288 – 291 | ……………… | 84 |
| 139 – 142 | ……………… | 49 | 292 – 296 | ……………… | 85 |
| 143 – 146 | ……………… | 50 | 297 – 301 | ……………… | 86 |
| 147 – 149 | ……………… | 51 | 302 – 305 | (10 months)… | 87 |
| 150 – 153 | (5 months)… | 52 | 306 – 310 | ……………… | 88 |
| 154 – 156 | ……………… | 53 | 311 – 314 | ……………… | 89 |
| 157 – 160 | ……………… | 54 | 315 – 319 | ……………… | 90 |
| 161 – 164 | ……………… | 55 | 320 – 323 | ……………… | 91 |
| 165 – 167 | ……………… | 56 | 324 – 328 | ……………… | 92 |
| 168 – 171 | ……………… | 57 | 329 – 332 | ……………… | 93 |
| 172 – 175 | ……………… | 58 | 333 – 337 | (11 months)…. | 94 |
| 176 – 178 | ……………… | 59 | 338 – 342 | ……………… | 95 |
| 179 – 182 | (6 months)… | 60 | 343 – 346 | ……………… | 96 |
| 183 – 187 | ……………… | 61 | 347 – 351 | ……………… | 97 |
| 188 – 191 | ……………… | 62 | 352 – 355 | ……………… | 98 |
| 192 – 196 | ……………… | 63 | 356 – 360 | ……………… | 99 |
| 197 – 200 | ……………… | 64 | 361 - 365 | (12 months)… | 100 |
| 201 - 205 | ……………… | 65 | | | |

B.  For Insurances written for more or less than one year:

1.  If insurance has been in force for 12 months or less, apply the standard short rate table for annual insurances to the full annual premium determined as for an insurance written for a term of one year.

2.  If insurance has been in force for more than 12 months:

    (a) Determine full annual premium as for an insurance written for a term of one year.

    (b) Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata Earned Premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the insurance was originally written.

    (c) Add premium produced in accordance with items (a) and (b) to obtain Earned Premium during full period insurance has been in force.

Furthermore and notwithstanding the foregoing, Underwriters shall retain the total premium for this Policy, such total premium to be deemed earned upon inception of the Policy if any Claim or Circumstance is reported to Underwriters under this Policy on or before such date of cancellation.

623AFB00201





Contract Leader

| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page 38 of 55 |

## RETROACTIVE LIMITATION CLAUSE

There shall be no liability hereunder in respect of any claim:

(a)   arising out of any circumstance or occurrence which has been notified to the Insurer on any other policy of Insurance effected prior to the inception of this Policy;

(b)   arising out of any circumstance or occurrence known to the Assured prior to the inception hereof and not disclosed to Underwriters at inception.

01/94
LSW559

## CHOICE OF LAW CLAUSE

In consideration of the premium charged for this policy, it is hereby understood and agreed by both the Assured and Underwriters that any dispute concerning the interpretation of this Policy shall be governed by the laws of New York.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED
623AFB00113

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE-LIABILITY-DIRECT (U.S.A.)

For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause-Liability-Direct) to liability insurances affording worldwide coverage.

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/2/64
NMA1477



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **39** of **55** |

### <u>NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BROAD) (U.S.A.)</u>

For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),

not being insurances of the classifications to which the Nuclear Incident Exclusion Clause-Liability-Direct (Limited) applies.

<u>This Policy</u>* does not apply:

I.    Under any Liability Coverage, to injury, sickness, disease, death or destruction:

    (a)    with respect to which an insured under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (b)    resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.    Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.    Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if:

    (a)    the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

    (b)    the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or





Contract Leader

| MARSH LTD | | |
| --- | --- | --- |
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page 40 of 55 |

(c)  the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.  As used in this endorsement:
'hazardous properties' include radioactive, toxic or explosive properties; 'nuclear material' means source material, special nuclear material or by-product material; 'source material', 'special nuclear material', and 'by-product material' have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; 'spent fuel' means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; 'waste' means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; 'nuclear facility' means:

(a)  any nuclear reactor,

(b)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; 'nuclear reactor' means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.  With respect to injury to or destruction of property, the word 'injury' or 'destruction' includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

* NOTE: As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.
17/3/60. NMA1256



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **41** of **55** |

## BEAZLEY

## WARRANTED NO HIGHER LIMITS ENDORSEMENT

In consideration of the premium charged for this Policy, it is hereby warranted that during the Policy Period the Assured will not purchase any Errors and Omissions insurance excess of the Limit of Liability stated in the Declarations unless Underwriters hereon have agreed that such excess Errors and Omissions insurance may be purchased. Underwriters expressly have the right to amend any of the terms and conditions of this Policy as a condition of agreeing that such Errors and Omissions insurance may be purchased.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

623AFB00097



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **42** of **55** |

## ADDITIONAL INSURED ENDORSEMENT

It is hereby understood and agreed that the following entity:

*FutureFuel Chemical Company*

is added as an additional **Insured** under the Insuring Agreement of this Policy for **Claims** first made against it during the **Period of Insurance**, but only with respect to liability for Professional Services which are covered under the Insuring Agreement of this Policy and then only to the extent the **Insured Organization** would have been liable and coverage would have been afforded under the terms and conditions of this Policy had such **Claim** been made against the **Insured Organization**.

The above mentioned extension of coverage shall not apply to any **Claim** which includes allegations or facts indicating actual or alleged independent or direct liability on the part of any such entity detailed above.

It is a condition precedent to liability under the above mentioned extension of coverage that such entity detailed above shall prove to Underwriters' satisfaction the extent of any **Claim** arising out of the **Insured Organization's** conduct as described above.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **43** of **55** |

### EXCLUDING MATTERS EXCLUSION

This **Policy** shall not indemnify the **Insured** in respect of any claim, loss, liability or expense arising out of any claim or **Circumstance**

(a) known to the **Insured** prior to the inception of this policy **Period** or which in the reasonable opinion of the **Insurers** ought to have been known or

(b) disclosed on the latest **Proposal** made to the **Insurers** or

(c) notified to the **Insurers** or another insurer by the Assured under any other insurance prior to the inception of this policy of insurance.

### AMENDED PRODUCT LIABILITY EXCLUSION ENDORSEMENT

In consideration of the premium charged for this Policy, it is hereby understood and agreed that Clause **VI. EXCLUSION** M. is deleted in its entirety and replaced with the following:-

M. **Products Liability**

1. arising out of or resulting from the design or manufacture of any goods or products which are sold or supplied by the **Assured** or by others under license from the **Assured**, other than the design of any product specifically designed for a customised system or process; or

2. arising out of or resulting from any subsequently replicated products using the same design.

For the purpose of definition, erroneous selection or specification of a standard 'patented' or 'shelf' product shall be deemed to be a design error as respects a customised system or process.

This exclusion shall not apply to any **Claim** which is covered pursuant to Insuring Agreement D. of this Certificate.

ALL OTHER EXCLUSIONS, CONDITIONS AND OTHER TERMS OF THIS CERTIFICATE REMAIN UNCHANGED.



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **44** of **55** |

### GENERAL, PRODUCTS AND COMPLETED OPERATIONS LIABILITY WARRANTY AND EXCLUSION ENDORSEMENT

It is a condition hereunder that the Assured maintain General Liability, Products Liability and Completed Operations Liability Insurance with a limit of liability at least equal to that afforded by this Certificate, except for any reduction of said limit due to the liability to pay Claims or Claims Expenses thereunder.

This Certificate does not apply to any Damages or Claims Expenses, covered by the General Liability, Products Liability and Completed Operations Liability Insurance required to be maintained as a condition of this Certificate, or any Excess Coverage.

In the event that General Liability, Product Liability and Completed Operations Liability Insurance and Excess Coverage maintained by the Assured is adjudged not to cover the Assured's legal liability, this Certificate will provide coverage pursuant to this Certificate's terms and conditions.

Should the Assured fail to maintain Products Liability and Completed Operations Liability Insurance, Underwriters reserve the right to cancel this Certificate with respect to any Claim from the date of such failure or the date of inception stated in the Declarations, whichever is the latter.



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **45** of **55** |

<u>**DESIGN BUILD ENDORSEMENT**</u>

*(to apply to the AFB A&E Mediatech)*

In consideration of the premium charged for this Policy, it is hereby understood and agreed that the following additional Exclusions are added to this Policy but only for projects:

1)      for which the **Assured** or any person, including an independent contractor, for who the **Assured Organization** is legally responsible renders **Professional Services**; and

2)      for which the **Assured**, any person, including an independent contractor, for who the **Assured Organization** is legally responsible, any entity under common ownership with the **Assured Organization** or any entity that has an ownership interest in the **Assured Organization** performs construction, erection, fabrication, installation, assembly, manufacture or the supply of equipment or materials incorporated therein.

The coverage under this Insurance does not apply to **Damages** or **Claims Expenses** in connection with or resulting from any **Claim**:

A.      **Acquisition of Real Estate**

     arising out of or resulting from the acquisition of any real estate or the securing of financing for the acquisition of any real estate.

B.      **Failure to Maintain Finance**

     arising out of or resulting from the advising or requiring of, or failure to advise or require, or failure to maintain or procure any financing or monies for the payment of any portion of any project, or of services or labor connected with any project.

C.      **Cost Overruns**

     for or arising out of or resulting from cost guarantees, cost representations, or contract price estimates of probable costs or cost estimates actually or allegedly being exceeded.

D.      **Delay in Construction, Erection, Fabrication, Installation and Assembly**

     for or arising out of or resulting from delay in construction, erection, fabrication, installation or assembly, or failure to complete any construction, erection, fabrication, installation or assembly at or within an agreed upon period of time.

E.      **Preparation or Failure to Prepare Safety Precautions or Procedures**

     arising out of or resulting from the preparation or failure to prepare any safety precautions or procedures in connection with any project.

F.      **Preparation or Failure to Prepare Quantity Surveys**



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **46** of **55** |

arising out of or resulting from the preparation or failure to prepare quantity surveys.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

## AMENDED DEFINITION S-ENDORSEMENT

It is hereby noted and agreed that **DEFINITION S** is amended as follows:

S   **'Professional Services'** means those services performed for others by or on behalf of the **Assured Organization** in the practice of architecture, engineering, land surveying, landscape architecture, interior design, construction management, enviromental consulting, Laboratory Services.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.



Contract Leader



| **MARSH LTD** | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **47** of **55** |

## PREMIUM PAYMENT CLAUSE

The (Re)Insured undertakes that premium will be paid in full to Underwriters within 60 days of inception of this policy (or, in respect of instalment premiums, when due).

If the premium due under this policy has not been so paid to Underwriters by the sixtieth day from the inception of this policy (and, in respect of instalment premiums, by the date they are due) Underwriters shall have the right to cancel this policy by notifying the (Re)Insured via the broker in writing.  In the event of cancellation, premium is due to Underwriters on a pro rata basis for the period that Underwriters are on risk but the full policy premium shall be payable to Underwriters in the event of a loss or occurrence prior to the date of termination which gives rise to a valid claim under this policy.

It is agreed that Underwriters shall give not less than 15 days prior notice of cancellation to the (Re)Insured via the broker.  If premium due is paid in full to Underwriters before the notice period expires, notice of cancellation shall automatically be revoked.  If not, the policy shall automatically terminate at the end of the notice period.

Unless otherwise agreed, the Leading Underwriter (and Agreement Parties if appropriate) are authorised to exercise rights under this clause on their own behalf and on behalf of all Underwriters participating in this contract.

If any provision of this clause is found by any court or administrative body of competent jurisdiction to be invalid or unenforceable, such invalidity or unenforceability will not affect the other provisions of this clause which will remain in full force and effect.

Where the premium is to be paid through a London Market Bureau, payment to Underwriters will be deemed to occur on the day of delivery of a premium advice note to the Bureau.

11/01
LSW3000





Contract Leader

| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page 48 of 55 |

### Special Cancellation/Insurer Downgrade Clause

X.1 The Insurer shall give notice to the Assured's representative as identified in the Schedule as soon as practicable and in any event within 14 days, or as soon as permitted by its regulator if later, where the Insurer:

   (i)  a.  ceases underwriting entirely; or

       b.  ceases underwriting the type of insurance provided by this policy in a territory where the Assured is domiciled; or

       c.  formally announces its intention to cease underwriting as per (i)a or (i)b above; or

   (ii)  voluntarily or involuntarily elects to wind up, run off its business, enter a scheme of arrangement or enter into any form of bankruptcy protection or related formal or informal termination of its insurance operations; or

   (iii)  has its authority to carry on insurance business withdrawn.

X.2 The Assured or the Assured's representative may terminate an Insurer's participation on this risk by giving written notice:

   (i)  When one of the events identified above at Condition X.1 takes place; or

   (ii)  In the event that an Insurer has its financial strength rating downgraded below BBB by Standard & Poor's or A- by AM Best. For Lloyd's syndicates it is the financial strength rating of Lloyd's as a whole which is considered.

The effective date of termination shall not be earlier than the date notice is actually given by the Assured or the Assured's representative.

Upon notice of cancellation having been given by the Assured or the Assured's representative to the Insurer, the Insurer shall pay to the Assured a pro rata return premium for the unexpired period of the policy. Such pro rata return premium shall be paid in accordance with the terms of trade previously agreed between the Assured's representative and the Insurer to whom notice of cancellation has been given.

In the event that there are any notifications under this policy or the Insurer has made any payments pursuant to any policy term or condition providing coverage under this policy to the Assured, the premium shall be deemed fully earned unless the Assured withdraws such notifications and/or reimburses the Insurer for any payment(s) made.



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page 49 of 55 |

## FOREIGN ACCOUNT TAX COMPLIANCE ACT ("FATCA")

Each (Re)Insurer hereby acknowledges the requirements of Sections 1471-1474 US Internal Revenue Code of 1986, as amended, and the Treasury regulations and other guidance issued from time to time thereunder ("FATCA") and the obligation of each of them to provide to Marsh Ltd a valid Internal Revenue Service ("IRS") Form W8-BEN-E, W-9 or other documentation meeting the requirements of the FATCA regulations to establish they are not subject to any withholding requirement pursuant to FATCA (the "Required Documentation").

Furthermore:

a)   If a (Re)Insurer becomes non-compliant with FATCA during the contract period or has not provided the Broker with the Required Documentation 14 days prior to any premium due date, the Withholding Agent (as defined in U.S. Treasury Regulation Section 1.1471-1(b)(147)) shall withhold 30% of the premium (to the extent all or a portion of that premium is subject to withholding pursuant to FATCA) due to that (Re)Insurer under this contract on that premium due date and shall promptly notify that (Re)Insurer via the Broker.

b)   The withholding of premium by virtue of (a) above shall not be, and shall not be treated by the (Re)Insurer as a breach of any premium payment condition, warranty or other clause whether or not entitling the (Re)Insurer to cancel, terminate or restrict this contract, refuse, restrict or delay payment of any claim or invoke any interest, penalty or other late payment provision. The (Re)Insurer shall be liable under this contract as if no such withholding had been made.

c)   The (Re)Insurer shall not recoup sums withheld under (a) above by deducting equivalent sums from any payments due to the (Re)Insured or by set off against any other sums owed by the (Re)Insurer and any general or contractual right of set-off enjoyed by the (Re)Insurer is hereby varied and qualified to that extent.

d)   Where premium is withheld in error, has not yet been paid to the IRS and the (Re)Insurer has been paid only the net premium following such withholding, the broker will cooperate with the (Re)insurer to process the requisite refund.

IUA 09-054 (FATCA)



| |
|---|
| ATB ±3 ∞ |
| Contract Leader |

| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER<br>B0509FINPS1700245 | | Page **50** of **55** |

| INFORMATION |
|---|
| Signed and dated proposal form dated 6/13/2017. |



Contract Leader

| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **51** of **55** |

## SECURITY DETAILS

**(RE)INSURER'S
LIABILITY:**

**LMA3333
(Re)insurer's liability several not joint**

The liability of a (re)insurer under this contract is several and not joint with other (re)insurers party to this contract. A (re)insurer is liable only for the proportion of liability it has underwritten. A (re)insurer is not jointly liable for the proportion of liability underwritten by any other (re)insurer. Nor is a (re)insurer otherwise responsible for any liability of any other (re)insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by a (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp. This is subject always to the provision concerning 'signing' below.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is a (re)insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together). The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion. A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other (re)insurer that may underwrite this contract. The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA. The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

**Proportion of liability**

Unless there is 'signing' (see below), the proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp and is referred to as its 'written line'.



Contract Leader

| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **52** of **55** |

Where this contract permits, written lines, or certain written lines, may be adjusted ('signed'). In that case a schedule is to be appended to this contract to show the definitive proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together). A definitive proportion (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of a Lloyd's syndicate taken together) is referred to as a 'signed line'. The signed lines shown in the schedule will prevail over the written lines unless a proven error in calculation has occurred.

Although reference is made at various points in this clause to 'this contract' in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

**ORDER HEREON:**   100% of 100%

**BASIS OF WRITTEN
LINES:**   Percentage of Whole

**SIGNING
PROVISIONS:**   In the event that the written lines hereon exceed 100% of the order, any lines written 'To Stand' will be allocated in full and all other lines will be signed down in equal proportions so that the aggregate signed lines are equal to 100% of the order without further agreement of any of the (Re)Insurers.

However:

a)   in the event that the placement of the order is not completed by the commencement date of the period of (Re)Insurance then all lines written by that date will be signed in full;

b)   the (Re)Insured may elect for the disproportionate signing of (Re)Insurers' lines, without further specific agreement of (Re)Insurers, providing that any such variation is made prior to the commencement date of the period of (Re)insurance, and that lines written 'To Stand' may not be varied without the documented agreement of those (Re)Insurers;



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page 53 of 55 |

 c) the signed lines resulting from the application of the above provisions can be varied, before or after the commencement date of the period of (Re)Insurance, by the documented agreement of the (Re)Insured and all (Re)Insurers whose lines are to be varied. The variation to the contracts will take effect only when all such (Re)Insurers have agreed, with the resulting variation in signed lines commencing from the date set out in that agreement.



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **54** of **55** |

In a co-insurance placement, following (re)insurers may, but are not obliged to, follow the premium charged by the leading (re)insurer.

(Re)Insurers may not seek to guarantee for themselves terms as favourable as those which others subsequently achieve during the placement.

(Re)insurers confirm and agree that where NCAD (Notice of Cancellation at Anniversary Date) is embedded in their stamp/line this is deemed to read and mean NCED (Notice of Cancellation at Expiry Date). This does not affect the right of the (re)insurer to issue a Notice of Cancellation in accordance with the contract terms.

**WRITTEN LINES:**

IRIS INSURANCE BROKERS LTD 1921 IIB
MISCELLANEOUS ERRORS AND OMISSIONS MARKET LINESLIP: SF050860R

For risks attaching from 1st April 2017 to 31st March 2018, inclusive.

**Section 2.**
   **For those accounts with Gross Premiums of USD 10,000 or currency equivalent or more**

   **Sums insured *up to* and including USD 5,000,000 or currency equivalent, or GBP 5,000,000:**

| Signed Line | Syndicate | Pseudonym | Reference |
|---|---|---|---|
| 49.20% | 2623 | AFB | _Z 2851917 ANPA_ |
| 10.80% | 623 | AFB | _AFB 13 06 17_ |
| 14.63% | 435 | FDY | BA801516A000 |
| 7.32% | 2001 | AML | DED0591817BR |
| 15.61% | 609 | AUW | E8ZQPJF17ALX |
| 2.44% | 727 | SAM | 9N490L0092FU |

100.00 %



AFB 13 06 17

Contract Leader

| **MARSH LTD** | | |
|---|---|---|
| CONTRACT NUMBER<br>B0509FINPS1700245 | | Page **55** of **55** |

Year of Account Signing Number and Date:

**2. A.**

| E6 | Surplus Line | 63052 | * | 07/04/2017 |
|---|---|---|---|---|
| E8 | Surplus Line | 63053 | * | 07/04/2017 |
| E9 | Non USA | 63054 | * | 07/04/2017 |



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER<br>B0509FINPS1700245 | | Page **1** of **9** |

## CONTRACT ADMINISTRATION

## AND

## ADVISORY DETAILS



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **2** of **9** |

---

| **SUBSCRIPTION AGREEMENT** |
|---|

**CONTRACT LEADER:**                    AFB2623

**BASIS OF AGREEMENT TO CONTRACT CHANGES:**

General Underwriting Agreement (February 2014) with Professional Indemnity Schedule (May 2005)

31 days extension, if required by the Insured, at terms and conditions to be agreed by the Contract Leader only on behalf of all (Re)Insurers hereon.

Where a following (Re)Insurer has charged a different contract premium to that required by the Contract Leader and there is a contract change which (a) is binding upon the following (Re)Insurers with the agreement of the Contract Leader only (and any additional agreement party if present), and (b) involves premium adjustment which is not already provided for within the terms of the contract, then the following (Re)Insurers agree to follow the premium adjustment agreed by the Contract Leader in the same ratio as their respective contract premium bears to that of the Contract Leader.

**OTHER AGREEMENT PARTIES FOR CONTRACT CHANGES, FOR PART 2 GUA CHANGES ONLY:**

Unless any other (Re)Insurers are specified below, the Agreement Parties for Part Two changes will be the Contract Leader only.

**AGREEMENT PARTIES FOR CONTRACT CHANGES, FOR THEIR PROPORTION ONLY:**

None, unless any (Re)Insurers are specified here.

Where a following (Re)Insurer has charged a different contract premium to that required by the Contract Leader and there is a contract change which

---



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page 3 of 9 |

a) is binding upon the following (Re)Insurers with the agreement of only the Contract Leader (and any additional agreement party if present), and

b) involves premium adjustment which is not already provided for within the terms of the contract, then the following (Re)Insurers agree to follow the premium adjustment agreed by the Contract Leader in the same ratio as their respective contract premium bears to that of the Contract Leader

**BASIS OF CLAIMS AGREEMENT:**

Claims to be managed in accordance with:
  i) The Lloyd's Claims Scheme (Combined), or as amended or any successor thereto.
  ii) IUA claims agreement practices.

For non-bureau companies only, the Contract Leader only and to be binding for non-bureau (Re)Insurers.

**CLAIMS AGREEMENT PARTIES:**

  i) For Lloyd's syndicates:
     The leading Lloyd's syndicate and, where required by the applicable Lloyd's Claims Scheme, the second Lloyd's syndicate.

     Where applicable, the second Lloyd's Syndicate is deemed to be the first Syndicate stamp to appear after the leading Lloyd's Syndicate.

  ii) For companies acting in accordance with the IUA claims agreement practices:
     The first IUA company and, where required by IUA practices, the second IUA company.

  iii) For non-bureau companies only:
     The Contract Leader only and to be binding for non-bureau (Re)Insurers

**CLAIMS ADMINISTRATION:**

Marsh Ltd and (Re)Insurers agree that any claims hereon (including any claims related costs/fees) that are in scope and supported by Electronic Claims File (ECF) will be notified and administered via the Electronic Claims File (ECF) system with payments processed via CLASS, unless both parties agree otherwise.



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page 4 of 9 |

Claims, or any element thereof, settled in a currency for which Marsh Ltd do not hold a banking account will be agreed using a notional rate of exchange which is subject to adjustment. Any difference greater than GBP1,000 per payment or in the aggregate, to be paid by or refunded to (Re)Insurers as appropriate.

Extension of time to file a proof of loss to be agreed
  a) if the Contract Leader is a non-Lloyd's underwriter, by the Contract Leader & Lloyd's Claims Agreement Parties only
  b) if the Contract Leader is a Lloyd's underwriter, by the Lloyd's Claims Agreement Parties only

Notwithstanding any contrary provisions concerning notification contained in applicable contract wording(s) to which this agreement applies and
in the absence of a condition specifically nominating a party to whom notice must be given (other than (Re)Insurers) and provided that notification otherwise fully satisfies policy conditions then the (Re)Insured will be regarded as having complied with contract notification provisions when Marsh Ltd or its subsidiary or successor entities receives notification by email, facsimile or post.

**RULES AND EXTENT OF ANY OTHER DELEGATED CLAIMS AUTHORITY:**

None, unless otherwise specified here by any other claims agreement parties shown above.

**EXPERT(S) FEES COLLECTION:**

Expert fees payable by Insurers for services performed on their behalf to be collected by the expert or their appointed fee collection service provider.

**SETTLEMENT DUE DATE:**

29th August 2017

**BUREAU(X) ARRANGEMENTS:**

Marsh Ltd to present de-linked signings to Xchanging where applicable.

Underwriters/ Reinsurers hereby note and agree to accept premium as and when received by the broker, including part payments, with Xchanging to sign accordingly.



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **5** of **9** |

Underwriters/ Reinsurers agree that the broker may settle premiums for this contract at different times and/or may release de-linked premiums for this contract into settlement at different times.

Underwriters/ Reinsurers agree that the second and subsequent premium instalments are taken down as additional premiums, other than annual re-signings

Policies to be signed in multiple copies, as required, for purposes designated therein or as slip policies as may be required.

Where Settlement Due Date falls upon a weekend or Bank Holiday it shall be deemed to be the next working day.

Where Settlement Due Date and Premium Payment Clause (30/09/08) LSW3001 payment due dates differ the dates shall automatically be amended to the later date. This also to apply to any instalments and/or extensions.

A Premium Payment Warranty or Settlement Due Date shall not be breached if the original presentation of the signing slip/contract and/or premium advice note to Xchanging is in time. If, subsequently, amendments to the signing slip/contract and/or premium advice note are notified to the broker by Xchanging, in order to enable it to be processed and the premium signing completed, the broker shall have an additional period of seven days from the date of such notification to complete the amendments and to resubmit the signing slip/contract and/or premium advice note to Xchanging.

Subject to Premium Processing Clause LSW3003 (14/12/09) as follows:

Where the premium is to be paid through Xchanging Ins-sure Services (XIS), payment to (Re)Insurers will be deemed to occur on the day that a delinked premium is released for settlement by the Appointed Broker or in the case of non-delinked premiums, on the day that the error-free Premium Advice Note (PAN) is submitted to XIS.





Contract Leader

| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page 6 of 9 |

Where premiums are to be paid by instalments under the Deferred Account Scheme, and the Appointed Broker does not receive the premium in time to comply with the agreed settlement date for the second or subsequent instalment, the Appointed Broker, if electing to suspend the automatic debiting of the relevant deferred instalment, shall advise the Slip Leader in writing and instruct XIS accordingly. XIS shall then notify (Re)Insurers. Payment to any entity within the same group of companies as the Appointed Broker will be deemed to be payment to the Appointed Broker.

Nothing in this clause shall be construed to override the terms of any Premium Payment Warranty or Clause or any Termination or Cancellation provision contained in this contract. Furthermore, any amendment to the Settlement Due Date of a premium instalment as a result of the operation of this Premium Processing Clause shall not amend the date that such instalment is deemed to be due for the purposes of such Premium Payment Warranty or Clause or Termination or Cancellation provision unless (Re)Insurers expressly agree otherwise.

Appointed Broker: Marsh Ltd

LSW3003
14/12/09

Reinsurers agree to accept premium payment in either Sterling (GBP), U.S. Dollars (USD) or original currency as may be applicable.

In respect of non –settlement currencies:
XIS to accept settlement of premium in Pounds Sterling (GBP) converted at the rate of exchange at the date of receipt of payment by Marsh Ltd. However, in the event Marsh Ltd are paid in Pounds Sterling (GBP), U.S. Dollars (USD) or EUROS (EUR) then settlement will be made via XIS in GBP, USD or EUR as received by Marsh Ltd.

In respect of electronically placed lines via PPL.  In the event the Settlement Due Date (as detailed in Subscription Agreement) and/or the Risk Code and/or Year of Account (as detailed in Fiscal and Regulatory) differ from those shown in the PPL SECURITY DETAILS, the information recorded in the PPL SECURITY DETAILS shall take precedence.



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **7** of **9** |

**NON–BUREAUX ARRANGEMENTS:**

Where any Premium Payment Warranty (PPW) or Premium Payment Condition (PPC) due date falls on a weekend or public holiday, payment of premium by telegraphic transfer or any other relevant electronic settlement method on the next working day will be deemed to be in compliance with such PPW or PPC.

Where (Re)Insurers have agreed to regular (weekly/ monthly/ quarterly) accounting the Premium Payment Warranty (PPW) or Premium Payment Condition (PPC) due date shall be overridden by the accounting agreement.





Contract Leader

| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER | | |
| B0509FINPS1700245 | | Page **8** of 9 |

## FISCAL AND REGULATORY

**TAX PAYABLE BY INSURER(S):** None

**COUNTRY OF ORIGIN:** United States of America

**OVERSEAS BROKER:**
Marsh USA Inc.
Washington Square
1050 Connecticut Avenue NW
Suite 700 I
Washington
DC 20036

**BROKER:**
Marsh Ltd
Tower Place
London
EC3R 5BU

**SURPLUS LINE BROKER:**
Licensee: Salinardo, Robert
Address : 1166 Avenue of the Americas
License #: 108379
City, State : New York, NY 100362708

**STATE OF FILING:** Virginia

**US CLASSIFICATION:** US Surplus Lines.

**ALLOCATION OF PREMIUM TO CODING:** E8    100%

**REGULATORY CLIENT CLASSIFICATION:** Large risk .



Contract Leader



| MARSH LTD | | |
|---|---|---|
| CONTRACT NUMBER<br>B0509FINPS1700245 | | Page **9** of **9** |

| BROKER REMUNERATION AND DEDUCTIONS |
|---|

**FEE PAYABLE BY CLIENT:**     No.

**TOTAL BROKERAGE:**     27.5%

**OTHER DEDUCTIONS FROM PREMIUM:**     None



Contract Leader

