**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(RICHMOND DIVISION)**

| | | |
|---|---|---|
| CHEMTREAT, INC., | ) | |
| | ) | |
|     Plaintiff/Counter Defendant | ) | Civil No: 3:19-cv-00063 |
| vs. | ) | |
| | ) | |
| CERTAIN UNDERWRITERS OF LLOY'S | ) | |
| OF LONDON SUBSCRIBING TO POLICY | ) | |
| NO. B0509FINS1700245 | ) | |
| | ) | |
|     Defendant/Counter Plaintiff | ) | |

**ANSWER TO COUNTERCLAIM**

For its Answer to the Counterclaim that Certain Underwriters at Lloyd's of London

Subscribing to Policy No. B0509FINPS1700245 ("Underwriters") have asserted against

it, ChemTreat, Inc. ("ChemTreat") responds to the Underwriters' corresponding

allegations as follows:

**NATURE OF THE CASE**

ChemTreat incorporates Underwriters' headings and labels solely as a matter of

convenience and for ease of cross-reference, and does not admit their labels or

characterizations are accurate or appropriate.

<u>Counterclaim ¶ 1</u>.  Underwriters issued A&E MediaTech Policy No.
B0509FINPS1700245 to ChemTreat for the Policy Period of July 1, 2017 to July 1, 2018
(the "Policy").[1]

<u>Response</u>:  ChemTreat admits the allegations contained in paragraph 1 of the

Counterclaim.

---

[1]  A true and correct copy of the Policy (except for the Application) is attached as Exhibit A to
ChemTreat's Amended Complaint.

Counterclaim ¶ 2. Underwriters seek a judicial declaration that they have no duty to defend or indemnify ChemTreat in the lawsuit captioned, Terry Windsor v. Hartford Steam Boiler Inspection and Insurance Co., No. CL17-3580 (Va. Cir. Ct., Henrico Cnty.) (the "Windsor Action").

Response: Paragraph 2 of the Counterclaim states a legal conclusion to which ChemTreat is not required to respond. If and to the extent the Court should determine that paragraph 2 contains factual allegations to which ChemTreat should respond, ChemTreat denies each and every allegation in this paragraph.

Counterclaim ¶ 3. The Windsor Action is a personal injury lawsuit arising out of an explosion at an industrial plant.

Response: ChemTreat admits the allegations contained in paragraph 3 of the Counterclaim only insofar as they provide a broad and generalized description of the Windsor Action.

Counterclaim ¶ 4. As set forth below, three exclusions in the Policy apply to separately and independently bar coverage for the Windsor Action because ChemTreat knew of facts and circumstances underlying the Windsor Action before the inception of the Policy on July 1, 2017.

Response: ChemTreat denies each and every allegation contained in paragraph 4 of the Counterclaim.

Counterclaim ¶ 5. Underwriters are entitled to a declaratory judgment that the Policy does not provide coverage for the Windsor Action because the three exclusions apply and that, therefore, Underwriters have no duty to provide a defense or indemnification for the Windsor Action.

Response: ChemTreat denies each and every allegation contained in paragraph 5 of the Counterclaim.

## JURISDICTION AND VENUE

Counterclaim ¶ 6. This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure for the purpose of determining a question of actual controversy between the parties as described more fully below.

<u>Response</u>: Paragraph 6 states a legal conclusion to which ChemTreat is not required to respond. If and to the extent the Court should determine that paragraph 6 contains factual allegations to which ChemTreat should respond, ChemTreat denies each and every allegation in this paragraph, except to admit only that: (a) there is an actual controversy between the parties; and (b) Underwriters seek declaratory relief.

<u>Counterclaim ¶ 7</u>. This action is currently ripe for adjudication.

<u>Response</u>: ChemTreat admits the allegations contained in paragraph 7 of the Counterclaim.

<u>Counterclaim ¶ 8</u>. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between ChemTreat and Underwriters, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

<u>Response</u>: ChemTreat admits the allegations contained in paragraph 8 of the Counterclaim.

<u>Counterclaim ¶ 9</u>. Venue is proper in this Court pursuant to 28 U.S.C. § 1441.

<u>Response</u>: ChemTreat admits the allegations contained in paragraph 9 of the Counterclaim.

## PARTIES

<u>Counterclaim ¶ 10</u>. Defendants/Counterclaim Plaintiffs Underwriters are Lloyd's of London Syndicates authorized to underwrite and insure risks within the Lloyd's of London insurance market, and they have their principal places of business outside of the United States. Lloyd's Syndicates 435, 609, 623, 727, 2001, and 2623 are the syndicates subscribing to the Policy.

<u>Response</u>: ChemTreat lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 10 of the Counterclaim that Underwriters are authorized to underwrite and insure risks within the Lloyd's of London insurance market, and, therefore, denies them. ChemTreat admits only that: (a) Underwriters

have their principal places of business outside of the United States; and (b) Lloyd's

Syndicates 435, 609, 623, 727, 2001 and 2623 are the syndicates subscribing to the

Policy.

Counterclaim ¶ 11.  None of the members of the syndicates subscribing to the
Policy are citizens of the State of Virginia.

Response:  ChemTreat admits the allegations contained in paragraph 11 of the

Counterclaim.

Counterclaim ¶ 12.  Plaintiff/Counterclaim Defendant ChemTreat is a corporation
organized and existing under the laws of the Commonwealth of Virginia with its principal
place of business in Virginia.

Response:  ChemTreat admits the allegations contained in paragraph 12 of the

Counterclaim.

## FACTUAL ALLEGATIONS

### A.  The Policy

Counterclaim ¶ 13.  The Policy provides coverage on a "Claims Made and
Reported Basis", meaning that coverage under the Policy applies "only to Claims first
made against the Assured and reported in writing to Underwriters pursuant to the terms
of" the Policy. Policy, p. 8 of 55.

Response:  ChemTreat denies each and every allegation contained in

paragraph 13 of the Counterclaim, and specifically denies that Underwriters have

accurately quoted part of a provision of the Policy.

Counterclaim ¶ 14.  Section XXIX of the Policy provides that "[a]ny disputes
involving this Policy shall be resolved applying the law designated in Item 12 of the
Declarations [New York]."  Policy, p. 36 of 55.

Response:  ChemTreat denies each and every allegation contained in

paragraph 14 of the Counterclaim, except to admit only that Underwriters have

accurately quoted and inserted corresponding verbiage into a part of a provision of the

Policy.

Counterclaim ¶ 15.  The Policy defines "Claim" to mean, in relevant part, "a demand received by any Assured for money or services including the service of suit or institution of arbitration proceedings."  *Id.*, Section VIII.F., p. 25 of 25.

Response:  ChemTreat denies each and every allegation contained in

paragraph 15 of the Counterclaim, except to admit only that Underwriters have

accurately quoted part of a provision of the Policy.

Counterclaim ¶ 16.  The Policy defines "Assured" to include ChemTreat, as the Named Insured, as well as its employees "but only for work done while acting within the scope of his or her employment and related to the conduct of the Assured Organization's business[.]"  *Id.*, Section IV.C.

Response:  ChemTreat denies each and every allegation contained in

paragraph 16 of the Counterclaim, except to admit only that Underwriters have

accurately quoted part of a provision of the Policy.

Counterclaim ¶ 17.  Subject to all of its terms and conditions, the Policy provides specified Architects and Engineers Professional Liability coverage under Insuring Agreement I.A.

Response:  ChemTreat admits the allegations contained in paragraph 17 of the

Counterclaim.

Counterclaim ¶ 18.  Under Insuring Agreement I.A., Underwriters agree to pay on behalf of ChemTreat:

> Damages and Claims Expenses, in excess of the Deductible, which the Assured shall become legally obligated to pay because of any Claim first made against the Assured during the Policy Period . . . and reported to Underwriters . . . during the Policy Period . . . arising out of any negligent act, error or omission in rendering or failing to render Professional Services . . . by the Assured or by any person, including an independent contractor, for whose negligent act, error or omission [ChemTreat] is legally responsible.

*Id.*, Section I.A., p. 8 of 55.

Response:  ChemTreat denies each and every allegation contained in

paragraph 18 of the Counterclaim, except to admit only that Underwriters have

accurately quoted part of a provision of the Policy.

Counterclaim ¶ 19.  The Policy's Retroactive Limitation Clause provides:

> There shall be no liability hereunder in respect of any claim:
> . . .
> (b) arising of out any circumstance or occurrence known to the Assured prior to the inception hereof [July 1, 2017] and not disclosed to Underwriters at inception [July 1, 2017].

*Id.*, Retroactive Limitation Clause, p. 38 of 55.

Response:  ChemTreat denies each and every allegation contained in

paragraph 19 of the Counterclaim, except to admit only that Underwriters have

accurately quoted and inserted corresponding verbiage into a part of a provision of the

Policy.

Counterclaim ¶ 20.  In the Miscellaneous Professional Indemnity Proposal Form that ChemTreat signed on June 13, 2017 and submitted to Underwriters as part of the application process for the Policy (the "Application"), ChemTreat answered "No" to the following question:

> After enquiry, is the Applicant or any subsidiary or any person intended to be covered aware of any negligent act, error, omission or any other fact, complaint, circumstance or situation which may be expected to give rise to a claim against the Applicant or any subsidiary or any person intended to be covered?

Application, p. 6 of 7. A true and correct copy of the Application, with redactions for potential confidential information of ChemTreat, is attached as Exhibit 1.

Response:  ChemTreat denies each and every allegation contained in

paragraph 20 of the Counterclaim, except to admit only that Underwriters have:  (a)

accurately quoted part of the Application; and (b) attached a copy of an Application (with

redactions) as Exhibit 1.

Counterclaim ¶ 21.  The Policy's Excluding Matters Exclusion provides:

> This Policy shall not indemnify the Insured in respect of any claim, loss, liability or expense arising out of any claim or Circumstance
> (a) known to the Insured prior to the inception of this Policy [July 1, 2017] or which in the reasonable opinion of the Insurers ought to have been known
> . . .

Policy, Excluding Matters Exclusion, p. 43 of 55.

Response: ChemTreat denies each and every allegation contained in

paragraph 21 of the Counterclaim, and specifically denies that Underwriters have

accurately quoted part of a provision of the Policy.

Counterclaim ¶ 22. The Policy defines "Circumstance" to mean "any fact, event, or situation that could reasonably be the basis for a Claim." *Id.*, Section VIII.E, p. 25 of 25.

Response: ChemTreat denies each and every allegation contained in

paragraph 22 of the Counterclaim, and specifically denies that Underwriters have

accurately quoted part of a provision of the Policy.

Counterclaim ¶ 23. Exclusion IV.B.1(a) (the "Prior Knowledge Exclusion") provides that the Policy shall not provide coverage for Damages or Claims Expenses in connection with or resulting from any Claim:
> 1. arising out of or resulting from any act, error or omission or Pollution Condition committed or arising prior to the inception date of this Insurance:
> (a) if any director, officer, principal, partner, insurance manager or any member of the risk management or legal department of the Assured Organization on or before the inception date [July 1, 2017] knew or could have reasonably foreseen that such act, error or omission or Pollution Condition might be expected to be the basis of a Claim . . .

*Id.*, Section IV.B.(1)(a), p. 16 of 55.

Response: ChemTreat denies each and every allegation contained in

paragraph 23 of the Counterclaim, except to admit only that Underwriters have

accurately quoted and inserted corresponding verbiage into a part of a provision of the

Policy.

## B.    **The Explosion**

Counterclaim ¶ 24. The Windsor Action arises out of a December 24, 2015 explosion at a Valley Proteins, Inc. ("Valley Proteins") plant, which occurred when the pressure vessel in the boiler system—the High Pressure Condensate Receiver (the "HPCR")—failed (the "Explosion").

Response:  ChemTreat denies each and every allegation contained in

paragraph 24 of the Counterclaim, except to admit only that:  (a) the Windsor Action

arises out of a December 24, 2015 accident at a Valley Proteins, Inc. ("Valley Proteins")

plant; and (b) that accident involved a pressure vessel in that plant's boiler system; the

High Pressure Condensate Receiver (the "HPCR").

Counterclaim ¶ 25.  The Explosion allegedly caused property damage as well as serious injuries to Terry Windsor, an employee who was working in the boiler room at the time.

Response:  ChemTreat denies each and every allegation contained in

paragraph 25 of the Counterclaim, except to admit only that the accident caused

property damage and injured Terry Windsor.

Counterclaim ¶ 26.  ChemTreat provided industrial water treatment services to Valley Proteins for its boiler system, including on-site services such as water quality testing of the HCPR.

Response:  ChemTreat admits the allegations contained in paragraph 26 of the

Counterclaim.

**C.     Pre-Suit Correspondence**

Counterclaim ¶ 27.  After the Explosion, ChemTreat received three letters before the inception of the Policy on July 1, 2017, notifying it of potential claims against it in connection with the Explosion and requesting that it notify its insurance carrier and preserve all evidence.

Response:  ChemTreat denies each and every allegation contained in

paragraph 27 of the Counterclaim, except to admit only that it received three letters

before the July 1, 2017 Policy inception date.

Counterclaim ¶ 28.  ChemTreat failed to provide notice of the Explosion until after the Policy incepted and after the Windsor Action was filed.

Response:  ChemTreat denies each and every allegation contained in

paragraph 28 of the Counterclaim, except to admit only that it did not notify Underwriters

of a Claim until after the Policy incepted and after the Windsor Action was filed.

Counterclaim ¶ 29.  First, on or about March 15, 2016, ChemTreat received a
letter from counsel for Mid-South Steam Boiler & Engineering Company, Inc. ("Mid-
South"), the manufacturer of the HCPR (the "March 15, 2016 Letter"). A true and correct
copy of the March 15, 2016 Letter is attached as Exhibit 2.

Response:  ChemTreat denies each and every allegation contained in

paragraph 29 of the Counterclaim, except to admit only that:  (a) on March 15, 2016 it

received letter from Mid-South's counsel; and (b) Underwriters attach a true and correct

copy of that letter as Exhibit 2 to the Counterclaim.

Counterclaim ¶ 30.  The March 15, 2016 Letter states that ChemTreat
"inspected, tested and/or serviced the boiler system associated with the [HCPR]", and
"[a]ccordingly, we are writing to place you on notice of potential claims Mid-South may
have against you, including, but not limited to, claims for indemnity and/or contribution."

Response:  ChemTreat denies each and every allegation contained in

paragraph 30 of the Counterclaim, and specifically denies that Underwriters have

accurately quoted from a part of the March 15, 2016 letter because, among other things,

Underwriters omitted the words "may have" from the beginning of the quoted language.

Counterclaim ¶ 31.  The March 15, 2016 Letter also requests that ChemTreat
"forward this letter to [its] insurance carriers and place them on notice of these potential
claims" and "preserve all evidence and potentially relevant or discoverable documents,
items, or information[.]"

Response:  ChemTreat denies each and every allegation contained in

paragraph 31 of the Counterclaim, except to admit only that Underwriters have

accurately quoted from a part of the March 15, 2016 letter.

Counterclaim ¶ 32.  Second, on or about May 5, 2017, ChemTreat received a
second letter from counsel for Mid-South (the "May 5, 2017 Letter"). True and correct
copies of the May 5, 2017 Letter and attachments are attached as Exhibit 3.

Response:  ChemTreat denies each and every allegation contained in

paragraph 32 of the Counterclaim, except to admit only that:  (a) ChemTreat received

the May 5, 2017 letter; and (b) Underwriters attach a true and correct copy of that letter

as Exhibit 3 to the Counterclaim.

Counterclaim ¶ 33.  The May 5, 2017 Letter encloses a copy of a complaint filed
by Valley Proteins, the owner of the plant where the Explosion occurred, against Mid-
South in the lawsuit caption, Valley Proteins, Inc. v. Mid-South Steam Boiler and
Engineering Co., Inc., No. 17-cv-19-HCMDEM (E.D. Va.) (the "Valley Proteins Action"),
in which Valley Proteins alleges that the Explosion was caused by Mid-South's
"defective, deficient, improper and inadequate treatment of the pressure vessel tank
during fabrication and manufacturing in order to relieve stress prior to the sale, supply,
distribution, and installation of the pressure vessel tank."

Response:  ChemTreat denies each and every allegation contained in

paragraph 33 of the Counterclaim, except to admit only that:  (a) the May 5, 2017 letter

enclosed the referenced Complaint; and (b) Underwriters have accurately quoted from a

part of the May 5, 2017 letter.

Counterclaim ¶ 34.  The May 5, 2017 Letter states:
As a supplement to our prior notice of potential claims Mid-South may
have against you, enclosed please find a lawsuit filed against Mid-South
by Valley proteins with respect to the subject accident. Mid-South may
have claims against you with respect to the matters raised in the lawsuit,
including for indemnity and/or contribution.

Response:  ChemTreat denies each and every allegation contained in

paragraph 34 of the Counterclaim, except to admit only that Underwriters have

accurately quoted from a part of the May 5, 2017 letter.

Counterclaim ¶ 35.  The May 5, 2017 Letter again asks ChemTreat to forward the
letter to its insurers and to preserve all evidence.

Response:  ChemTreat denies each and every allegation contained in

paragraph 35 of the Counterclaim, except to admit only that it received the May 5, 2017

letter.

Counterclaim ¶ 36. In addition, the May 5, 2017 Letter asks ChemTreat to advise Mid-South if ChemTreat is represented by counsel in connection with the Explosion.

Response: ChemTreat denies each and every allegation contained in

paragraph 30 of the Counterclaim, except to admit only that it received the May 5, 2017

letter.

Counterclaim ¶ 37. Finally, on or about June 9, 2017, ChemTreat was served with a letter dated June 4, 2017 from counsel for Terry Windsor, the individual injured in the Explosion (the "June 9, 2017 Letter"). A true and correct copy of the June 9, 2017 Letter is attached as Exhibit 4.

Response: ChemTreat denies each and every allegation contained in

paragraph 37 of the Counterclaim, except to admit only that: (a) it received the June 9

2017 letter from counsel for Terry Windsor; and (b) Underwriters attach a true and

correct copy of that letter as Exhibit 4 to the Counterclaim.

Counterclaim ¶ 38. The June 9, 2017 Letter states that counsel represents Mr. Windsor in connection with claims for his personal injuries resulting from the Explosion due to the failure of the HCPR and that counsel understands "that ChemTreat, Inc. provided services in connection with the High Pressure Condensate Receiver and other pressure vessels and equipment at the facility, and that ChemTreat, Inc. also provided training to Valley Proteins employees in connection with such equipment."

Response: ChemTreat denies each and every allegation contained in

paragraph 30 of the Counterclaim, except to admit only that Underwriters have

accurately: (a) summarized counsel's statement in that letter as to his representation;

and (b) quoted from a part of the June 9, 2017 letter.

Counterclaim ¶ 39. The June 9, 2017 Letter requests that ChemTreat preserve all evidence related to the HCPR, the Valley Proteins plant, and the Explosion.

Response: ChemTreat denies each and every allegation contained in

paragraph 39 of the Counterclaim, except to admit only that it received the June 9, 2017

letter.

**D.**     **The Windsor Action**

Counterclaim ¶ 40.  On or about October 12, 2017, Mr. Windsor filed the Windsor Action against ChemTreat, Adam Hildebrant, Mid-South and a number of other parties. A copy of the complaint in the Windsor Action (the "Windsor Complaint") is attached as Exhibit 5.

Response:  ChemTreat admits the allegations contained in paragraph 40 of the

Counterclaim.

Counterclaim ¶ 41.  According to the Windsor Complaint, ChemTreat provided water treatment and chemical products, services and support to certain equipment at the Valley Proteins plant, including the HCPR.  *See* Windsor Compl., ¶ 181.

Response:  ChemTreat denies each and every allegation contained in

paragraph 41 of the Counterclaim, except to admit only that the Windsor Complaint

makes certain allegations that refer to ChemTreat.

Counterclaim ¶ 42.  The Windsor Complaint alleges that "ChemTreat had a duty to test the water quality of the HCPR and to determine if the water quality was within acceptable limits so as to prevent corrosion within the HCPR."  *Id.*, ¶ 182.

Response:  ChemTreat denies each and every allegation contained in

paragraph 42 of the Counterclaim, except to admit only that the Windsor Complaint

makes certain allegations that refer to ChemTreat.

Counterclaim ¶ 43.  According to the Windsor Complaint, water inspections by ChemTreat's inspector Mr. Hildebrant revealed water quality problems, but Mr. Hildebrant and ChemTreat did not notify Valley Proteins.  *Id.*, ¶¶ 264-65.

Response:  ChemTreat denies each and every allegation contained in

paragraph 43 of the Counterclaim, except to admit only that the Windsor Complaint

makes certain allegations that refer to ChemTreat.

Counterclaim ¶ 44.  The Windsor Complaint alleges that, if Mr. Hildebrant or ChemTreat had notified Valley Proteins that the water quality of the HCPR was not within acceptable limits, which was causing corrosion and eroding the structural integrity of the HCPR, the structural issues would have been corrected and the Explosion would not have occurred.  *See id.*, ¶¶ 283-85.

Response: ChemTreat denies each and every allegation contained in paragraph 44 of the Counterclaim, except to admit only that the Windsor Complaint makes certain allegations that refer to ChemTreat.

Counterclaim ¶ 45. The Windsor Complaint seeks $25 million jointly and severally from all defendants.

Response: ChemTreat admits the allegations contained in paragraph 45 of the Counterclaim.

Counterclaim ¶ 46. Also on October 12, 2017, ChemTreat received a subpoena to produce documents in the Valley Proteins Action, directing ChemTreat to produce "any and all documents regarding the boilers and pressure vessel systems located at" the Valley Proteins plant (the "Mid-South Subpoena"). A true and correct copy of the Mid-South Subpoena is attached as Exhibit 6.

Response: ChemTreat denies each and every allegation contained in paragraph 46 of the Counterclaim, except to admit only that: (a) on October 12, 2017 it received a subpoena in the Valley Proteins Action; and (b) Underwriters attach a true and correct copy of the subpoena as Exhibit 6 to the Counterclaim.

E.   **ChemTreat's Request for Coverage**

Counterclaim ¶ 47. By e-mail dated October 17, 2017, Raushanah Rasheed of Marsh USA, Inc. ("Marsh"), on behalf of ChemTreat, provided notice to Underwriters of the Windsor Action, enclosing a copy of the Windsor Complaint.

Response: ChemTreat admits the allegations contained in paragraph 47 of the Counterclaim.

Counterclaim ¶ 48. Before this date, ChemTreat had not provided notice to Underwriters of any of the facts and circumstances related to the Explosion or any claims or potential claims against ChemTreat in connection with the Explosion, including the March 15, 2016 Letter; May 5, 2017 Letter; or June 9, 2017 Letter (collectively, the "Pre-Suit Correspondence").

Response:  ChemTreat denies each and every allegation contained in

paragraph 48 of the Counterclaim, except to admit only that prior to the notice it

provided on October 17, 2017 it had not provided notice to Underwriters.

Counterclaim ¶ 49.  On October 25, 2017, ChemTreat, via Marsh, provided notice to Underwriters of a subpoena to produce documents in the Mid-South Action, directing ChemTreat to produce "any and all documents regarding the boilers and pressure vessel systems located at" the Valley Proteins plant (the "Mid-South Subpoena").

Response:  ChemTreat admits the allegations contained in paragraph 49 of the

Counterclaim.

Counterclaim ¶ 50.  By letter from counsel dated December 15, 2017, Underwriters denied coverage for the Windsor Action because the Excluding Matters Exclusion, the Retroactive Limitation Clause, and the Prior Knowledge Exclusion apply and reserved all rights. A true and correct copy of this letter is attached as Exhibit 7.

Response:  ChemTreat denies each and every allegation contained in

paragraph 50 of the Counterclaim, except to admit only that:  (a) it received a copy of

the Underwriters' December 15, 2017 letter, the contents of which and arguments

contained in it ChemTreat disputes; and (b) Underwriters attach a true and correct copy

of the letter as Exhibit 7 to the Counterclaim.

Counterclaim ¶ 51.  ChemTreat disputed Underwriters' coverage position in a May 22, 2018 letter.  A true and correct copy of this letter is attached as Exhibit 8.

Response:  ChemTreat admits the allegations contained in paragraph 51 of the

Counterclaim.

Counterclaim ¶ 52.  Underwriters responded to ChemTreat's correspondence on June 22, 2018, reiterating that no coverage is available under the Policy for the Windsor Action.  A true and correct copy of this letter is attached as Exhibit 9.

Response:  ChemTreat denies each and every allegation contained in

paragraph 52 of the Counterclaim, except to admit only that:  (a) it received a copy of

the Underwriters' June 22, 2018 letter, the contents of which and arguments contained

in it ChemTreat disputes; and (b) Underwriters attach a true and correct copy of the

letter as Exhibit 9 to the Counterclaim.

Counterclaim ¶ 53.  ChemTreat initiated this coverage litigation on January 31,
2018 seeking defense and indemnity coverage under the Policy for the Windsor Action.

Response:  ChemTreat admits the allegations contained in paragraph 53 of the

Counterclaim.

## COUNT I

### For A Declaration That the Retroactive Limitation Clause
### Bars Coverage for the Windsor Action

Counterclaim ¶ 54.  Underwriters incorporate by reference the allegations of the
foregoing paragraphs of this Counterclaim.

Response:  ChemTreat repeats its responses to paragraphs 1-53 of the

Counterclaim and incorporates them by this reference as if set forth fully herein.

Counterclaim ¶ 55.  The Policy's Retroactive Limitation Clause bars coverage for
any Claim "arising out of any circumstance or occurrence known to the Assured prior to
the inception" of the Policy "and not disclosed to Underwriters at inception [July 1,
2017]."  Policy, Retroactive Limitation Clause, p. 38 of 55.

Response:  Paragraph 55 states a legal conclusion to which ChemTreat is not

required to respond.  If and to the extent the Court should determine that paragraph 55

contains factual allegations to which ChemTreat should respond, ChemTreat denies

each and every allegation in this paragraph, except to admit only that Underwriters have

accurately quoted from a portion of the Policy.

Counterclaim ¶ 56.  The Explosion occurred on December 24, 2015—over a year
and a half before the inception of the Policy on July 1, 2017.

Response:  ChemTreat denies each and every allegation contained in

paragraph 56 of the Counterclaim, except to admit only that the accident at the Valley

Proteins plant occurred more than a year and a half before the Policy inception date of July 1, 2017.

Counterclaim ¶ 57.  On the application for the Policy, which was signed on June 13, 2017, ChemTreat answered "No" to a question asking whether, after enquiry, ChemTreat or any Insured was aware of any circumstance which may be expected to give rise to a Claim.  *See* Application, p. 6 of 7.

Response:  ChemTreat denies each and every allegation contained in paragraph 57 of the Counterclaim, except to admit only that Underwriters have accurately quoted the answer to one of the questions on the Application.

Counterclaim ¶ 58.  By that time, ChemTreat was aware that the HCPR of a boiler system it had maintained and otherwise serviced had failed, causing an explosion that resulted in property damage and injury. Based on this knowledge alone, ChemTreat knew or should have known that a Claim might result.

Response:  ChemTreat denies each and every allegation contained in paragraph 58 of the Counterclaim, except to admit only that ChemTreat was aware that:

(a) an accident occurred which involved a pressure vessel in the Valley Proteins plant'sboiler system; and (b) the accident resulted in property damage and bodily injury.

Counterclaim ¶ 59.  Additionally, by the time the application was signed on June 13, 2017, ChemTreat had received three letters notifying it of potential claims against it in connection with the Explosion and requesting that ChemTreat put its insurance carrier on notice and preserve all evidence.

Response:  ChemTreat denies each and every allegation contained in paragraph 59 of the Counterclaim, except to admit only that it had received the three letters identified in paragraphs 27, 29, 32 and 37 of the Counterclaim before the date on which the Application was signed.

Counterclaim ¶ 60.  As such, ChemTreat was aware of a circumstance—the Explosion and the Pre-Suit Correspondence—prior to the inception of the Policy and did not disclose such circumstance to Underwriters at inception, including when prompted to do so in response to a specific question in the application for the Policy.

Response:  ChemTreat denies each and every allegation contained in

paragraph 60 of the Counterclaim.

Counterclaim ¶ 61.  Underwriters are therefore entitled to a declaration that the Policy's Retroactive Limitation Clause bars any coverage whatsoever for the Windsor Action, and therefore Underwriters have no duty to defend or indemnify ChemTreat or any other party.

Response:  ChemTreat denies each and every allegation contained in

paragraph 61 of the Counterclaim.

## COUNT II

### For A Declaration That the Excluding Matters Exclusion
### Bars Coverage for the Windsor Action

Counterclaim ¶ 62.  Underwriters incorporate by reference the allegations of the foregoing paragraphs of this Counterclaim.

Response:  ChemTreat repeats its responses to paragraphs 1-61 of the

Counterclaim and incorporates them by this reference as if set forth fully herein.

Counterclaim ¶ 63.  The Policy's Excluding Matters Exclusion provides that there is no coverage with respect to "any claim, loss, liability or expense arising out of any claim or Circumstance . . . known to the Insured prior to the inception of this policy Period or which in the reasonable opinion of the Insurers ought to have been known[.]" Policy, Excluding Matters Exclusion.

Response:  ChemTreat denies each and every allegation contained in

paragraph 63 of the Counterclaim, except to admit only that Underwriters have

accurately quoted from a part of the Policy.

Counterclaim ¶ 64.  "Circumstance" means "any fact, event or situation that could reasonably be the basis for a claim." *Id.*, Section VII.E., p. 24 of 25.

Response:  ChemTreat denies each and every allegation contained in

paragraph 64 of the Counterclaim, and specifically denies that Underwriters have

accurately quoted from a part of the Policy.

Counterclaim ¶ 65.  Before the Policy's inception on July 1, 2017, ChemTreat was aware that the HCPR of a boiler system it had maintained and otherwise serviced had failed, causing an explosion that resulted in property damage and injury. Based on this knowledge, ChemTreat knew or should have known that a Claim might result.

Response:  ChemTreat denies each and every allegation contained in

paragraph 65 of the Counterclaim, except to admit only that:  (a) an accident occurred

which involved a pressure vessel in the Valley Proteins plant's boiler system; and (b)

the accident resulted in property damage and bodily injury.

Counterclaim ¶ 66.  Moreover, prior to the Policy's inception, ChemTreat had received three letters—the Pre-Suit Correspondence—notifying it of potential claims against it in connection with the Explosion and its provision of water treatment services for the boiler system and the HCPR and requesting that it put its insurance carrier on notice and preserve all evidence.

Response:  ChemTreat denies each and every allegation contained in

paragraph 30 of the Counterclaim, except to admit only that it had received the three

referenced letters before the Policy inception date.

Counterclaim ¶ 67.  Having received the Pre-Suit Correspondence, ChemTreat knew or should have known of a fact, event or situation or which in the reasonable opinion of Underwriters ought to have been known that could reasonably be expected to be the basis for a Claim prior to the inception of the Policy

Response:  ChemTreat denies each and every allegation contained in

paragraph 67 of the Counterclaim.

Counterclaim ¶ 68.  The Windsor Action arises out of such Circumstance.

Response:  ChemTreat denies each and every allegation contained in

paragraph 68 of the Counterclaim.

Counterclaim ¶ 69.  Underwriters are therefore entitled to a declaration that the Excluding Matters Exclusion bars any coverage whatsoever for the Windsor Action, and therefore Underwriters have no duty to defend or indemnify ChemTreat or any other party.

Response:  ChemTreat denies each and every allegation contained in

paragraph 69 of the Counterclaim.

## COUNT III

### For A Declaration That the Prior Knowledge Exclusion
### Bars Coverage for the Windsor Action

Counterclaim ¶ 70.  Underwriters incorporate by reference the allegations of the foregoing paragraphs of this Counterclaim.

Response:  ChemTreat repeats its responses to paragraphs 1-69 of the

Counterclaim and incorporates them by this reference as if set forth fully herein.

Counterclaim ¶ 71.  The Policy's Prior Knowledge Exclusion bars coverage in connection with any Claim "arising out of or resulting from any act, error or omission . . . committed or arising prior to the inception date" of the Policy if, before the Policy's inception, "any director, officer, principal, partner, insurance manager or any member of the risk management or legal department" of ChemTreat "knew or could have reasonably foreseen that such act, error or omission . . . might be expected to be the basis of a Claim."  Policy, Section IV.B.1(a).

Response:  Paragraph 71 states a legal conclusion to which ChemTreat is not

required to respond.  If and to the extent the Court should determine that paragraph 71

contains factual allegations to which ChemTreat should respond, ChemTreat denies

each and every allegation in this paragraph, except to admit only that Underwriters have

accurately quoted from a part of the Policy.

Counterclaim ¶ 72.  The causes of action asserted against ChemTreat arise out of ChemTreat's provision of water treatment services to Valley Proteins' boiler system prior to the Explosion, which occurred over a year before the Policy's July 1, 2017 inception.

Response:  ChemTreat denies each and every allegation contained in

paragraph 72 of the Counterclaim, except to admit only that the accident at the Valley

Proteins plant occurred over one year before the Policy's July 1, 2017 inception date.

Counterclaim ¶ 73.  Before the inception date of the Policy on July 1, 2017, ChemTreat knew that the HCPR of the Valley Proteins boiler system had failed, causing

an explosion that resulted in property damage and injury. Based on this knowledge alone, ChemTreat knew or should have known that a Claim might result.

Response:  ChemTreat denies each and every allegation contained in

paragraph 73 of the Counterclaim, except to admit only that it knew:  (a) an accident

occurred which involved a pressure vessel in the Valley Proteins plant's boiler system;

and (b) the accident resulted in property damage and bodily injury.

Counterclaim ¶ 74.  Moreover, prior to the Policy's inception on July 1, 2017, ChemTreat received three letters—the Pre-Suit Correspondence—notifying it of potential Claims against it in connection with the Explosion and its provision of water treatment services for the boiler system and the HCPR and requesting that it put its insurance carrier on notice and preserve all evidence.

Response:  ChemTreat denies each and every allegation contained in

paragraph 74 of the Counterclaim, except to admit only that it received the three

referenced letters before the Policy's July 1, 2017 inception date.

Counterclaim ¶ 75.  Based on information and belief, any director, officer, principal, partner, insurance manager or any member of the risk management or legal department of ChemTreat received the Pre-Suit Correspondence.

Response:  ChemTreat denies each and every allegation contained in

paragraph 75 of the Counterclaim.

Counterclaim ¶ 76.  Having received the Pre-Suit Correspondence, ChemTreat knew or could have reasonably foreseen that its provision of water treatment services to Valley Proteins' boiler system could give rise to a Claim against it.

Response:  ChemTreat denies each and every allegation contained in

paragraph 76 of the Counterclaim.

Counterclaim ¶ 77.  Underwriters are therefore entitled to a declaration that the Prior Knowledge Exclusion bars any coverage whatsoever for the Windsor Action, and therefore Underwriters have no duty to defend or indemnify ChemTreat or any other party.

Response:  Paragraph 77 states a legal conclusion to which ChemTreat is not

required to respond.  If and to the extent the Court should determine that paragraph 77

contains factual allegations to which ChemTreat should respond, ChemTreat denies each and every allegation in this paragraph and denies Underwriters are entitled to any such relief.

ChemTreat generally denies each and every allegation asserted in Underwriters' Counterclaim that it has not specifically admitted above.

ChemTreat denies Underwriters' entitlement to any of the relief they seek in the Counterclaim.

## Defenses

### First Defense

Underwriters' counterclaims and each of the fail to state claims on which this Court can grant relief.

### Second Defense

Underwriters' counterclaims and each of them are barred by Underwriters prior and material breach of the Policy contract to which they subscribed.

### Third Defense

Underwriters' counterclaims and each of them are barred or defeated, in whole or in part, for the reasons set forth in ChemTreat's Complaint.

### Fourth Defense

Underwriters' counterclaims and each of them are barred or defeated, in whole or in part, by the Underwriters' failures to conduct a reasonable and good faith investigation into ChemTreat's requests for a defense and for indemnity.

DATED: April 15, 2019                    Respectfully submitted,

/s/ *Constantinos G. Panagopoulos*
Constantinos Panagopoulos (#33356)
BALLARD SPAHR  LLP
1909 K Street, NW – 12th Floor
Washington, DC  20006-1157
Telephone:  202-661-2200
Facsimile:  202-661-2299
cgp@ballardspahr.com

and

Andrew J. Petrie
BALLARD SPAHR  LLP
1225 Seventeenth Street – Suite 2300
Denver, Colorado  80202-5596
Telephone:  303-292-2400
Facsimile:  303-296-3956
petriea@ballardspahr.com
*(pro hac vice application to be filed)*

*Attorneys for Plaintiff ChemTreat, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2019, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send notifications of such filing to

all counsel of record.

/s/ *Constantinos G. Panagopoulos*
Constantinos Panagopoulos (#33356)
BALLARD SPAHR  LLP
1909 K Street, NW – 12th Floor
Washington, DC  20006-1157
Telephone:  202-661-2200
Facsimile:  202-661-2299
cgp@ballardspahr.com